ACCEPTED
03-14-00552-CV
5174167
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 1:02:39 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00552-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/6/2015 1:02:39 PM

JEFFREY D. KYLE
Clerk

RAGHUNATH DASS, P.E.,
*Appellant*,

v.

TEXAS BOARD OF PROFESSIONAL ENGINEERS,
*Appellee*.

On Appeal from the 201st Judicial District Court, Travis County, Texas;
Cause No. D-1-GN-14-000568, before the Honorable Stephen Yelenosky.

## APPELLEE'S BRIEF

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | JENNIFER L. HOPGOOD<br>State Bar No. 24073010<br>Assistant Attorney General |
| CHARLES E. ROY<br>First Assistant Attorney General | Administrative Law Division<br>Office of the Texas Attorney General<br>P.O. Box 12548, Capitol Station |
| JAMES E. DAVIS<br>Deputy Attorney General for<br>Civil Litigation | Austin, Texas 78711-2548<br>Telephone: (512) 475-4200<br>Facsimile: (512) 320-0167 |
| DAVID A. TALBOT, JR.<br>Chief, Administrative Law<br>Division | *Attorneys for Appellee,*<br>*Texas Board of*<br>*Professional Engineers* |

## ORAL ARGUMENT NOT REQUESTED

May 6, 2015

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

**Plaintiff/Appellant**

Raghunath Dass, P.E.

**Appellate Counsel**

Jimmy Alan Hall, P.L.L.C.
4600 Mueller Boulevard, Suite 2121
Austin, TX 78723-3372
Facsimile: (512) 857-9195
jahall@fbjah.com

J. Woodfin Jones
Alexander Dubose Jefferson
& Townsend LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Facsimile: (512) 482-9303
wjones@adjtlaw.com

**Defendant/Appellee**

Texas Board of
Professional Engineers

**Appellee Counsel**

**Office of the Attorney General**
Jennifer L. Hopgood
Administrative Law Division
P.O. Box 12548
Austin, TX 78711-2548

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...................................................................... ii

TABLE OF CONTENTS ............................................................................................... iii

INDEX OF AUTHORITIES ........................................................................................... v

STATEMENT OF THE CASE ........................................................................................ xi

ISSUES CORRECTED ................................................................................................... xii

STATEMENT REGARDING ORAL ARGUMENT ...................................................... xii

APPELLEE'S BRIEF .................................................................................................... 1

STATEMENT OF FACTS CORRECTED ..................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................................. 16

STANDARD OF REVIEW ............................................................................................ 16

ARGUMENT .................................................................................................................. 18

I.     The only issue before this Court is whether the district court properly granted the Board's motion for summary judgment, dismissing Mr. Dass's lawsuit; however, because Mr. Dass has failed to raise this issue in his Appellant's Brief, he has waived error ............................................................................................................... 18

    A.    Mr. Dass has waived error, and the Court should affirm the district court's granting of the Board's motion for summary judgment. ............................... 18

    B.    Even on the merits, the district court properly granted the Board's motion for summary judgment. ..................................................................................... 19

        1.    Mr. Dass's second motion for rehearing failed to preserve error. ........................... 20

        2.    When Mr. Dass dismissed his first appeal, the doctrines of res judicata and collateral estoppel precluded Mr. Dass from relitigating those same claims. ......... 24

        3.    The Board's Amended Final Order complied with the Final Judgment in the first suit. ............................................................................................................ 27

II.    Mr. Dass fails to preserve error for his Issues Nos. 1-6 and his bill of exception issue. ................................................................................................................... 27

    A.    Mr. Dass also waived his Issues Nos. 1, 2, and 3 because he failed to raise these issues in either his motion for rehearing or district court, and these three issues do not implicate subject-matter jurisdiction. ............................................ 29

        1.    Mr. Dass's Issue No. 1 is waived because even if the Board's issuance of the Amended Final Order was erroneous, Mr. Dass failed to raise this issue in his motion for rehearing. ...................................................................................... 32

        2.    Although Mr. Dass's Issue No. 2 is waived, even on the merits Mr. Dass's argument would fail to show how the Board may not fix responsibility for services performed in the practice of engineering. ................................................. 34

            a.    Broad definition of "practice of engineering." ...................................................... 35

iii

       b.  CME and the reports. ........................................................................... 36

    3.     Although Mr. Dass's Issue No. 3 is waived, even on the merits the ALJ correctly ruled that Mr. Dass failed to follow the legally required bidding process for a public works project......................................................... 38

  B.    Mr. Dass has waived his right to complain of the CME Advisory Opinion (Mr. Dass's fourth issue). ................................................................................... 39

  C.    Mr. Dass has also waived his fifth and sixth issues because his complaint that the substantial evidence standard was not met must have been brought in his first appeal, which he withdrew. ............................................................ 41

  D.    Because Mr. Dass failed to brief his issue regarding the exclusion of evidence and has thus waived this point of error, the Court should not consider documents not properly before the Court. ........................................................................... 43

CONCLUSION AND PRAYER ................................................................................... 44

CERTIFICATE OF COMPLIANCE............................................................................ 46

CERTIFICATE OF SERVICE ................................................................................... 46

# INDEX OF AUTHORITIES

**Cases**

*Amstadt v. U.S. Brass Corp.*,
919 S.W.2d 644 (Tex. 1996) ............................................................................... 25

*Barr v. Resolution Trust Corp.*,
837 S.W.2d 627 (Tex. 1992) ............................................................................... 24

*Burke v. Cent. Educ. Agency*,
725 S.W.2d 393 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ................................ 21, 22, 23, 39

*Carpenter v. First Tex. Bancorp*, No. 03-12-00004-CV,
2014 WL 2568494 (Tex. App.—Austin June 5, 2014, pet. filed) ........................... 18

*Carrizales v. Tex. Dep't Prot. & Reg. Servs.*,
5 S.W.3d 922 (Tex. App.—Austin 1999, pet. denied) ........................................... 31

*Centeq Realty Inc. v. Siegler*,
899 S.W.2d 195 (Tex. 1995) ............................................................................... 20

*Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conservation Comm'n*,
124 S.W.3d 844 (Tex. App.—Austin 2003, pet. denied) ....................................... 33

*Citizens Ins. Co. of Am. v. Daccach*,
217 S.W.3d 430 (Tex. 2007) ............................................................................... 24

*City of Celina v. Dynavest Joint Venture*,
253 S.W.3d 399 (Tex. App.—Austin 2008, no pet.) .............................................. 33

*City of Houston v. Clear Creek Basin Auth.*,
589 S.W.2d 671 (Tex. 1979) ............................................................................... 28

*Concho Residential Servs., Inc. v. MHMR Servs. for the Concho Valley*,
No. 03-98-00022-CV, 1999 WL 644727 (Tex. App.—Austin Aug. 26, 1999, pet. denied) .... 19

*Crider v. Crider*, No. 01-10-00268-CV,
2011 WL 2651794 (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. denied) (mem. op.) ... 19

*Dreyer v. Greene*,
871 S.W.2d 697 (Tex. 1993) ............................................................................... 31

*El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*,
247 S.W.3d 709 (Tex. 2008) ............................................................................... 41

*Hamamcy v. Tex. State Bd. of Med. Exam'rs*,
900 S.W.2d 423 (Tex. App.—Austin 1995, writ denied) ....................................... 21, 22

*Hamilton v. Wilson*,
249 S.W.3d 425 (Tex. 2008) (per curium)..................................................................... 17

*Hill v. Bd. of Trs.*,
40 S.W.3d 676 (Tex. App.—Austin 2001, no pet.) ...................................................... 22

*Ingersoll-Rand Co. v. Valero Energy Corp.*,
997 S.W.2d 203 (Tex. 1999)......................................................................................... 24

*John Gannon, Inc. v. Gunnarson Outdoor Adver., Inc.*, No. 03-08-00404-CV,
2010 WL 3192536 (Tex. App.—Austin Aug. 11, 2010, pet. denied) ...................................... 19

*Krot v. Fid. Nat'l Title Co.*, No. 03-14-00250-CV,
2014 WL 7464084 (Tex. App.—Austin Dec. 31, 2014, no pet. hist.) (mem. op.) ................... 28

*Lear Sieglar, Inc. v. Perez*,
819 S.W.2d 470 (Tex. 1991)......................................................................................... 17

*Loftin v. Lee*,
341 S.W.3d 352 (Tex. 2011)......................................................................................... 31

*Mack Trucks, Inc. v. Tamez*,
206 S.W.3d 572 (Tex. 2006)......................................................................................... 43

*Mansfield State Bank v. Cohn,*
573 S.W.2d 181 (Tex. 1978)......................................................................................... 28

*Mapco, Inc. v. Carter*,
817 S.W. 686 (Tex. 1991)............................................................................................. 30

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*,
939 S.W.2d 139 (Tex. 1997)......................................................................................... 24

*Pub. Util. Comm'n v. Allcomm Long Distance, Inc.*,
902 S.W.2d 662 (Tex. App.—Austin 1995, writ denied) ............................................. 31

*Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*,
109 S.W.3d 130 (Tex. App.—Austin 2003, no pet.) ................................................... 30

*Schanzle v. JPMC Specialty Mortg.*, No. 03-09-00639-CV,
2011 WL 832170, (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem. op.)................... 28

*Suburban Util. Corp. v. Pub. Util. Comm'n*,
652 S.W.2d 358 (Tex. 1983)................................................................................... 21, 24

*SWEPI LP v. R.R. Comm'n*,
314 S.W.3d 253 (Tex. App.—Austin 2010, pet. denied)............................................. 30

*Sysco Food Servs. Inc. v. Trapnell*,
890 S.W.2d 796 (Tex. 1994) ............................................................... 25

*Tex. Emp't Comm'n v. Int'l Union of Elec., Radio & Mach. Workers, Local Union No. 782*,
352 S.W.2d 252 (Tex. 1961) ............................................................... 30

*Tex. Gen. Land Office v. Crystal Clear Water Supply Corp.*,
449 S.W.3d 130 (Tex. App.—Austin 2014, pet. filed) ............................. 30

*Tex. Highway Comm'n v. Tex. Ass'n of Steel Importers*,
372 S.W.2d 525 (Tex. 1963) ............................................................... 33

*Tex. State Bd. of Pharm. v. Witcher*,
447 S.W.3d 520 (Tex. App.—Austin 2014, pet. filed) ............................. 41

*United States v. Utah Constr. & Mining Co.*,
384 U.S. 394, (1966) ......................................................................... 25

*Williams v. Geeslin*, No. 03-05-00450-CV,
2006 WL 2032570 (Tex. App.—Austin July 21, 2006, no pet.) (mem. op.) ............ 23

**Statutes**

Tex. Gov't Code § 2001.145 .............................................................. 20

Tex. Gov't Code § 2001.146 .............................................................. 20

Tex. Gov't Code § 2001.174 ...................................................... 30, 31, 41

Tex. Gov't Code § 2001.174(2)(B) ....................................................... 29

Tex. Gov't Code § 2001.1775 ...................................................... 29, 32, 33, 34

Tex. Gov't Code § 2254.002(1)(B) ..................................................... 6, 38

Tex. Gov't Code § 2254.002(2)(A)(vii) ................................................. 6, 38

Tex. Gov't Code § 2254.002(2)(B)(vii) ................................................. 6, 38

Tex. Gov't Code § 2254.004(a)(1) ...................................................... 7, 39

Tex. Gov't Code § 2254.004(a)(2) ...................................................... 7, 39

Tex. Occ. Code ch. 1001 ................................................................. 3

Tex. Occ. Code § 1001.003 ............................................................... 36

Tex. Occ. Code § 1001.003(b) ........................................................ 3, 35

Tex. Occ. Code § 1001.003(c)(1) ........................................................ 4, 35

Tex. Occ. Code § 1001.003(c)(12) ...................................................... 4, 36

Tex. Occ. Code § 1001.004(a) ................................................................. 4

Tex. Occ. Code § 1001.004(b)(1) ........................................................ 3, 35

Tex. Occ. Code § 1001.004(b)(3) ........................................................ 3, 35

Tex. Occ. Code § 1001.004(d) ............................................................. 4, 36

Tex. Occ. Code § 1001.021(a) ................................................................. 5

Tex. Occ. Code § 1001.053 ...................................................................... 6

Tex. Occ. Code § 1001.202 ...................................................................... 4

Tex. Occ. Code § 1001.252(a) ................................................................. 5

Tex. Occ. Code § 1001.252(f) .................................................................. 5

Tex. Occ. Code § 1001.407(1) .............................................................. 6, 38

Tex. Occ. Code § 1001.451(2) .................................................................. 5

Tex. Occ. Code § 1001.451(3) .................................................................. 5

Tex. Occ. Code § 1001.451(4) .................................................................. 5

Tex. Occ. Code § 1001.452(1) .................................................................. 5

Tex. Occ. Code § 1001.454 ...................................................................... 5

Tex. Occ. Code § 1001.501 ...................................................................... 6

Tex. Occ. Code § 1001.502 ...................................................................... 6

Tex. Occ. Code § 1001.601(a) .............................................................. 7, 40

Tex. Occ. Code § 1001.601(b) ................................................................. 7

Tex. Occ. Code § 1001.602(1) .............................................................. 8, 40

Tex. Occ. Code § 1001.602(2) .............................................................. 8, 40

**Rules**

Tex. R. App. P. 38(f) ............................................................................ 18

Tex. R. App. P. 38(i) ....................................................................................................... 18

Tex. R. App. P. 38.1(g) ..................................................................................................... 2

Tex. R. App. P. 38.2(a)(1)(B) ..................................................................................... xii, 2

Tex. R. Civ. P. 166a(c) ................................................................................................... 27

**Texas Administrative Code**

22 Tex. Admin. Code § 131.101 ................................................................................. 7, 40

22 Tex. Admin. Code § 131.103 ................................................................................. 7, 40

22 Tex. Admin. Code § 131.105 ................................................................................. 8, 40

22 Tex. Admin. Code § 131.109 ................................................................................. 8, 40

22 Tex. Admin. Code § 137.33(b) ........................................................................... 10, 11

22 Tex. Admin. Code § 137.33(f) ................................................................................. 11

22 Tex. Admin. Code § 137.53(a) .............................................................................. 6, 38

22 Tex. Admin. Code § 137.53(b) .............................................................................. 6, 38

22 Tex. Admin. Code § 137.63(b)(2) ..................................................................... 6, 11, 39

22 Tex. Admin. Code § 139.11 ....................................................................................... 5

22 Tex. Admin. Code § 139.17 ....................................................................................... 5

22 Tex. Admin. Code § 139.31 ....................................................................................... 5

22 Tex. Admin. Code § 139.35 ....................................................................................... 5

22 Tex. Admin. Code § 139.47 ....................................................................................... 5

22 Tex. Admin. Code § 139.49 ....................................................................................... 5

**Legislative Analysis**

Bill Summ., Tex. S.B. 277, 78th Leg., R.S. (2003) ........................................................ 7

Senate Comm. on Licensing & Admin. Procedures, Comm. Report (Unamended), Bill Analysis,
    Tex. S.B. 277, 78th Leg., R.S. (2003) ..................................................................... 3

Senate Research Ctr., Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003) ................................. 3

Tex. S.B. 277, 78th Leg., R.S. (2003)...................................................................................... 7

**Other Authorities**

Black's Law Dictionary 870 (8th ed. 2004)............................................................................ 30

## STATEMENT OF THE CASE

*Nature of the case*:    This is an appeal from a final judgment by the Travis County District Court granting the Texas Board of Professional Engineer's ("Board") motion for summary judgment and dismissing Raghunath Dass, P.E.'s ("Mr. Dass") suit for judicial review. Order Granting Def.'s Mot. for Summ. J., C.R. at 465, copy attached at **Appendix 1**.

*Trial Court*:    201st Judicial District Court of Travis County, in Cause No. D-1-GN-14-000568, The Honorable Stephen Yelenosky, Presiding.

*Trial Court Proceeding*:    Appellant Mr. Dass filed his suit in district court, C.R. at 4-20, seeking judicial review of the Board's Amended Final Order. *Id.*[1] The Board filed a motion for summary judgment, seeking to dispose of all claims. C.R. at 334-406. After considering the pleadings of the parties, the district court granted the Board's summary judgment motion and dismissed Mr. Dass's lawsuit. C.R. at 465.

*Trial Court Disposition*:    The district court rendered a final order granting the Board's motion for summary judgment and dismissing Mr. Dass's lawsuit. *See* Order Granting Def.'s Mot. for Summ. J., C.R. at 465. Mr. Dass appeals this final order. Notice of Appeal, C.R. at 472.

---

[1] Mr. Dass previously filed a suit for judicial review, seeking review of the Board's original Final Order, in *Dass v. Tex. Bd. of Prof'l Eng'rs*, Cause No. D-1-GN-12-003397 (419th Dist. Ct., Travis County, Tex.). Mr. Dass appealed the Final Judgment in that suit but then dismissed his appeal. *See* Appellant's Mot. to Withdraw Appeal, C.R. at 370-71.

## ISSUES CORRECTED[2]

**I.** **Whether the trial court properly granted the Board's motion for summary judgment, dismissing Mr. Dass's suit.**

**II.** **Whether Mr. Dass fails to preserve error for both his Issues Nos. 1-6 and his bill of exception.**

## STATEMENT REGARDING ORAL ARGUMENT

Although the Board does not believe any issues on the merits are before the Court and oral argument is not needed, if the Court grants oral argument the Board's counsel respectfully asks to participate in the oral argument.

---

[2] *See* Tex. R. App. P. 38.2(a)(1)(B).

No. 03-14-00552-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT
AUSTIN, TEXAS

RAGHUNATH DASS, P.E.,
*Appellant*,

v.

TEXAS BOARD OF PROFESSIONAL ENGINEERS,
*Appellee*.

On Appeal from the 201st Judicial District Court, Travis County, Texas;
Cause No. D-1-GN-14-000568, before the Honorable Stephen Yelenosky.

**APPELLEE'S BRIEF**

TO THE HONORABLE THIRD COURT OF APPEALS:

The trial court properly granted the Board's motion for summary judgment, dismissing Mr. Dass's suit. Because Mr. Dass fails to brief this issue in his Appellant's Brief ("Dass Brief"), he has waived any complaint about the district court's granting of the Board's summary judgment motion. Thus, the district court's granting of the Board's motion, dismissing Mr. Dass's suit, should be affirmed by the Court.

None of Mr. Dass's other issues (his Issues Nos. 1-6) are properly before this Court because Mr. Dass failed to raise the issues in his response to the Board's summary judgment motion or, alternatively, either in his trial court brief or his

motion for rehearing. And because Mr. Dass also fails to brief his bill of exception, and because there is no fundamental error in the district court excluding the documents referenced in Mr. Dass's bill of exception, the district court's ruling, to exclude the administrative record ("A.R.") from the first suit for judicial review, should be affirmed.

## STATEMENT OF FACTS CORRECTED

Mr. Dass's statement of facts contains reference to documents not properly before the Court and contains argument and incorrect assertions not supported by the record. [3] Therefore, the Board submits this corrected Statement of Facts. *See* Tex. R. App. P. 38.2(a)(1)(B); Tex. R. App. P. 38.1(g).

**The Parties.**

Appellee the Texas Board of Professional Engineers ("Board") "was established to license professional engineers, enforce the Texas Engineering

---

[3]     Because the "facts" in paragraphs 4, 7, 9, and 11 in Dass's Brief are not properly before the Court, the Court would first have to review the district court's ruling in which the court excluded certain documents, including the administrative record from the first appeal; however, Mr. Dass has failed to brief this issue. *See infra* at section II.D for discussion on Mr. Dass's failure to brief his bill of exception in his appellant brief. Thus, any of Mr. Dass's references in his brief to "A.R." and any assertions relying on "A.R." are not properly before the Court. *See also* Dass Brief at p. 1 n. 1 (explaining that his references to "A.R." refer to the administrative record in the first suit for judicial review).

The Board intends to file a separate motion to strike Mr. Dass's Exhibits 6 and 7, attached to his appellant's brief, because these documents are not properly before the Court.

Also, the argument and incorrect assertions contained in these paragraphs would be improper even if the additional documents had been admitted and were properly before the Court.

2

Practice Act [Tex. Occ. Code ch. 1001], [and] resolve complaints." Senate Research Ctr., Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003). Copy attached as **Appendix 2**.

Appellant Raghunath Dass, P.E., is a licensed professional engineer who holds a professional license issued by the Board. Am. Final Order, Finding of Fact ("FoF") 1, C.R. at 224. He was the sole licensed professional engineer employed by Trinity Soils Investigation Laboratories, Inc. ("Trinity Soils Lab"). *Id.*

**The Legislature has tasked the Board to protect the public health, safety and welfare of the citizens of Texas.**

"The [Board] was created in 1937, after an explosion at the New London School killed nearly 300 students and teachers." Senate Comm. on Licensing & Admin. Procedures, Comm. Report (Unamended), Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003), copy attached at **Appendix 3**. The purpose of the Texas Engineering Practice Act is to "protect the public health, safety, and welfare" and "fix responsibility for work done or services or acts performed in the practice of engineering." Tex. Occ. Code Ann. §§ 1001.004(b)(1), (3) (West 2012).

The term "practice of engineering" is broad. *See* Tex. Occ. Code § 1001.003(b) ("'practice of engineering' means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in

3

applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work."). The practice of engineering also "includes . . . consultation, investigation, evaluation, analysis, planning, . . . engineering for testing or evaluating materials for construction or other engineering use"). Tex. Occ. Code § 1001.003(c)(1). The list of activities that the Legislature considers engineering services includes a catchall provision: the practice of engineering "includes . . . any other professional service necessary for the planning, progress, or completion of an engineering service." Tex. Occ. Code § 1001.003(c)(12).

To assist the Board in meeting these serious responsibilities, the Legislature has delegated to the Board the authority to "adopt and enforce any rule or bylaw necessary to perform its duties, govern its proceedings, and regulate the practice of engineering." Tex. Occ. Code § 1001.202. The Legislature also "recognizes the vital impact that the rapid advance of knowledge of the mathematical, physical, and engineering sciences as applied in the practice of engineering has on the lives, property, economy, and security of state residents and the national defense." Tex. Occ. Code § 1001.004(a).

Also, the Act "shall be liberally construed to carry out the intent of the legislature." Tex. Occ. Code § 1001.004(d).

4

**The Board investigates complaints, enforces the Act, and may assess sanctions and penalties for any violations.**

The Board "shall administer and enforce" the Texas Engineering Practice Act ("Act"). Tex. Occ. Code § 1001.021(a); *see also* 22 Tex. Admin. Code § 139.31 (2015) (Tex. Bd. of Prof'l Eng'rs, Enforcement Actions for Violations of the Act). The Board must receive and investigate complaints against licensed engineers. Tex. Occ. Code § 1001.252(a); 22 Tex. Admin. Code § 139.11 (Complaints—General). After receiving a complaint, the Board "shall determine whether the board has the authority to resolve the complaint." Tex. Occ. Code § 1001.252(f); *see also* 22 Tex. Admin. Code § 139.17 (Investigating a Complaint).

After the Board determines that a licensed engineer has violated the Act or a board rule, the engineer is subject to disciplinary action by the Board. Tex. Occ. Code § 1001.452(1). The Board may suspend an engineer's license, probate the suspension of the license, or formally reprimand a license holder. Tex. Occ. Code §§ 1001.451(2), (3), (4). *See also* 22 Tex. Admin. Code §§ 139.35 (Sanctions & Penalties), .47 (Probation), .49 (License Suspension/Revocation Based on License Holder's Status Review). If the Board recommends suspension of an engineer's license, that person is entitled to a hearing. Tex. Occ. Code § 1001.454. The Board

5

may also impose administrative penalties against an engineer who has violated the Act or Board rules. Tex. Occ. Code §§ 1001.501, .502.

**Public works projects have special requirements.**

The Act prohibits a political subdivision of the state from "construct[ing] a public work involving engineering in which the public health, welfare, or safety is involved, unless . . . the engineering plans, specifications, and estimates have been prepared by an engineer." Tex. Occ. Code § 1001.407(1).[4] Additionally, a licensed engineer may not "submit or request" a "competitive bid to perform professional engineering service" unless specifically authorized. 22 Tex. Admin. Code § 137.53(a) (Engineer Standards of Compliance with Professional Services Procurement Act). Competitive bidding includes "submission of any monetary cost information in the initial step of selecting engineers." *Id.* at (b). A professional engineer is responsible for ensuring that his associates do not violate the Act. 22 Tex. Admin. Code § 137.63(b)(2) (Engineers' Responsibility to the Profession)

The Professional Services Procurement Act ("PSPA") is found at Texas Government Code chapter 2254. The PSPA applies to counties and professional engineering services provided by a professional engineer. Tex. Gov't Code Ann. §§ 2254.002(1)(B), (2)(A)(vii), (2)(B)(vii) (West 2008). A county may only select

---

[4] There are exemptions to this public works provision, but none of the exemptions applied in the project in which Mr. Dass was involved. *See* Tex. Occ. Code § 1001.053 (listing exemptions from the public works requirements).

6

a provider based on qualifications and then must attempt to negotiate a contract with that provider at a "fair and reasonable price." Tex. Gov't Code §§ 2254.004(a)(1), (2).

**The Board shall prepare and publish advisory opinions.**

In 2003, the Legislature required the Board to issue advisory opinions. Bill Summ., Tex. S.B. 277, 78th Leg., R.S. (2003) ("The bill requires the board, on its own initiative or at the request of any interested person, to prepare and maintain advisory opinions about the interpretation or application of the Texas Engineering Practice Act and to make that information available on the board's Internet website."), copy attached as **Appendix 4**. Senate Bill 277 created subchapter M, entitled "Advisory Opinions" and added four related sections. *See* excerpt of Tex. S.B. 277, 78th Leg., R.S. (2003), at pp. 34-35 (showing the addition of subchapter M), attached as **Appendix 5**.

The Legislature tasked the Board with the following duty: "On its own initiative or at the request of any interested person, the board shall prepare a written advisory opinion about (1) an interpretation of this chapter; or (2) the application of this chapter to a person in regard to a specified existing or hypothetical factual situation." Tex. Occ. Code § 1001.601(a). *See also id.* at (b) (requiring the Board to issue advisory opinions upon request); 22 Tex. Admin. Code §§ 131.101 (Subject of an Advisory Opinion), .103 (Request for an Advisory

Opinion), .105 (Board Initiated Opinion) ("When a majority of the board determines that an opinion would be in the public interest or in the interest of any person or persons within the jurisdiction of the board, the board may on its own motion issue an advisory opinion.").

The Board also must "number and classify each advisory opinion" and "annually compile a summary of the opinions in a single reference document that is available on the Internet." Tex. Occ. Code § 1001.602(1), (2); *see also* 22 Tex. Admin. Code § 131.109 (Compilation of Advisory Opinions).

**The Board investigated a complaint against Mr. Dass and then brought a contested case against him for violations of the Act.**

In 2009 Mr. Dass's employer, Trinity Soils Lab, submitted a proposal "to perform construction material testing" for a public works project for San Patricio County ("County"), specifically regarding the construction of a horse barn ("Project") at the County's fairgrounds. FoF nos. 5, 6, C.R. at 225. The County hired Trinity Soils Lab to perform the testing. Trinity Soils Lab submitted sixteen construction materials testing reports to the County, but all of the reports lacked a signature or seal of a licensed professional engineer. FoF nos. 7, 8, C.R. at 225. Mr. Dass "did not perform or directly supervise" any of the testing reflected in the sixteen construction materials testing reports Trinity Soils Lab submitted to the engineering firm of record during the period of February 17, 2009 to April 7, 2009.

8

FoF no. 9, C.R. at 225. Nor, prior to April 17, 2009, did Mr. Dass have any knowledge of either the County's Project or the sixteen reports submitted to the County. FoF no. 10, C.R. at 225.[5]

Mr. Dass, however, on April 20, 2009, after the reports had already been submitted to the County without his review or analysis, "added his undated signature and seal to copies" of the sixteen reports and "resubmitted" the reports to the County. *See* FoF no. 11, C.R. at 225. Subsequently, the County terminated its contract with Trinity Soils Lab. Proposal for Decision ("PFD") at p. 2, C.R. at 344. The engineer subsequently hired by the County to complete the testing work filed a complaint with the Board against Mr. Dass. *Id.*

After notice and hearing, a contested case hearing was held at the State Office of Administrative Hearings ("SOAH"). Mr. Dass represented himself pro se. PFD, C.R. at 343. The Board presented evidence regarding the bidding process and the manner in which both the testing and the submitting of the reports was done. Regarding the bidding, the Board's Director of Compliance and Enforcement, C.W. Clark, testified that a professional engineer "must use reasonable care and diligent effort to ensure that persons or firms associated with

---

[5] The engineering firm of record for the Project subcontracted with Trinity Soils Lab for the construction materials testing. C.R. at 349. The senior engineer of the engineering firm of record, Lewis Shrier, testified at the contested case hearing that he became concerned that the submitted reports needed to have an engineering seal and shared this concern with the non-engineer at Trinity Soils Lab who had created the sixteen reports. C.R. at 349.

the engineer do not engage in conduct which, if done by the engineer, would violate the [Act] or any Board rule, including the PSPA." C.R. at 348. Mr. Clark also testified that "by not demonstrating reasonable care or diligence to prevent his employer from submitting a competitive bid for the public works project, Mr. Dass committed a violation." C.R. at 348.

Mr. Clark further testified that "when engineering work is released, it must either be signed, sealed, and dated, or be marked as preliminary." C.R. at 348. Here, Mr. Dass failed to sign and seal the reports before the reports were submitted to the engineering firm of record, and this failure to sign and seal was a violation of Board rule 137.33(b). And lastly, Mr. Clark testified "anytime a professional engineer creates or signs a document reflecting engineering work, the licensed engineer must affix his seal before the document is released from [his] control." C.R. at 348. Thus, "a licensed engineer is not allowed to release engineering work without it being signed and sealed and then later, go back and add his signature and seal to the document." C.R. at 348.

The SOAH Administrative Law Judge ("ALJ") then issued the PFD. C.R. at 343-59, dated June 13, 2012. The ALJ found that Mr. Dass committed the following violations:

- **Conclusion of Law No. 5**: Mr. Dass violated 22 Tex. Admin. Code § 137.33(b) (Sealing Procedures) "when he failed to supervise the

10

performance of the CMT testing."[6] This conclusion was supported by FoF No. 14 (Mr. Dass "failed to exercise reasonable care and diligence to prevent [Trinity Soils Lab] from performing construction material testing for the Project without having the tests performed or directly supervised by a licensed professional engineer.").

- **Conclusion of Law No. 6**: Mr. Dass violated 22 Tex. Admin. Code § 137.33(f) (Sealing Procedures) "when he allowed [Trinity Soils Lab] to release the CMT reports without having signed, dated, and sealed the CMT reports before they were released."[7] This conclusion was supported by FoF No. 15 (Mr. Dass "failed to exercise reasonable care and diligence to prevent [Trinity Soils Lab] from submitting [construction material testing] reports for the Project without the signature and seal of a licensed professional engineer.").

- **Conclusion of Law No. 7**: Mr. Dass violated 22 Tex. Admin. Code § 137.63(b)(2) (Engineers' Responsibility to the Profession) "when he failed to exercise reasonable care and diligence to prevent TSI from submitting a competitive bid for professional engineering services in violation of the PSPA." [8] This conclusion was supported by FoF No. 13 (Mr. Dass "failed to exercise reasonable care and diligence to prevent [Trinity Soils Lab] from submitting a proposal for construction material testing for the Project which included a price bid.").

---

[6] "License holders shall only seal work done by them, performed under their direct supervision as defined in § 131.81 of this title, relating to Definitions, or shall be standards or general guideline specifications that they have reviewed and selected. Upon sealing, engineers take full professional responsibility for that work." 22 Tex. Admin. Code § 137.33(b).

[7] "License holders shall affix their seal and original signature or electronic seal and signature with the date on the final version of their engineering work before such work is released from their control." 22 Tex. Admin. Code § 137.33(f).

[8] The engineer shall . . . exercise reasonable care or diligence to prevent the engineer's partners, associates, and employees from engaging in conduct which, if done by the engineer, would violate any provision of the Texas Engineering Practice Act, general board rule, or any of the professional practice requirements of federal, state and local statutes, codes, regulations, rules or ordinances in the performance of engineering services. 22 Tex. Admin. Code § 137.63(b)(2).

11

PFD, C.R. at 357-59. The ALJ recommended the following sanctions and penalty: fully probated suspension of Mr. Dass's engineering license for two years, a formal reprimand, and an administrative penalty of $4,000.00.

The Board adopted the PFD in its entirety. *See* Final Order, dated Aug. 16, 2012, a copy is attached at **Appendix 6**.

**First suit for judicial review.**

Mr. Dass filed a suit for judicial review in Travis County District Court, seeking review of the Board's Final Order. *Dass v. Tex. Bd. of Prof'l Eng'rs*, No. D-1-GN-12-003397 (419th Dist. Ct., Travis County, Tex.), The Honorable Gisela Triana presiding. Mr. Dass appeared pro se during the briefing and hearing on the merits. *See, e.g.*, cover letter for Initial Brief, with Mr. Dass acting pro se, copy attached at **Appendix 7**. The court issued the Final Judgment, ruling that "Findings of Fact No. 16 and 17 and Conclusion of Law No. 8 in the Board's Final Order [we]re not supported by substantial evidence." Final J., dated Sept. 27, 2013, C.R. at 365. The court also ruled that the "remaining findings of facts and conclusions of law in the Board's Final Order [we]re supported by substantial evidence." The court noted, "In light of the Court's decision to strike limited portions of the Final Order, the Court remands this matter to the Board for any further action it deems appropriate given the ruling." The Final Judgment "dispose[d] of all claims and all parties" and was "final and appealable." C.R. at 365.

12

**Appeal of Final Judgment and Amended Final Order.**

After the district court issued its Final Judgment, Mr. Dass filed an appeal of the Final Judgment. Notice of Appeal, dated Oct. 23, 2013, copy attached at **Appendix 8**.

The Board subsequently adopted the Amended Final Order. Am. Final Order, dated Nov. 21, 2013, C.R. at 223-27. The Amended Final Order conformed the Final Order to the district court's Final Judgment by dropping the two findings of fact and one conclusion of law that the court ruled were not supported by substantial evidence. And while the district court found substantial evidence to support the administrative penalty from the Final Order, in the Amended Final Order the Board reduced the administrative penalty to be assessed against Mr. Dass. *See* Am. Final Order, C.R. at 227 (reducing the penalty from $4,000 to $1,500.00).

On December 3, 2013, again acting pro se, Mr. Dass filed his Motion to Withdraw Appeal, seeking to dismiss his appeal to the Third Court of Appeals, stating that he "believe[d]" his appeal "ha[d] become moot due to the Amended Final Order from Appellee." C.R. at 370-78. This Court issued an order dismissing Mr. Dass's appeal. C.R. at 379.

On December 10, 2013, Dass filed his Motion for Rehearing. C.R. at 380-406. His motion was overruled by operation of law.

13

On December 18, 2013, this Court dismissed Mr. Dass's appeal. C.R. at 379.

**Second Suit for Judicial Review.**

On February 27, 2014, Mr. Dass filed a second suit for judicial review, seeking review of the Board's Amended Final Order. *Dass v. Tex. Bd. of Prof'l Eng'rs*, No. D-1-GN-14-000568 (201st Dist. Ct., Travis County, Tex.), The Honorable Stephen Yelenosky presiding. The Board then filed a motion for summary judgment on May 29, 2014. C.R. at 334-406. The court granted the Board's summary judgment motion. Order Granting Def.'s Mot. for Summ. J., C.R. at 465, copy attached at **App. 1**. The Order disposed of all other claims and was final and appealable. *Id.* Dass subsequently filed the instant direct appeal of the District Court's order. *See* Notice of Appeal ("appeal[ing] from the Order Granting Defendant's Motion for Summary Judgment), C.R. at 472.

**Bill of Exception.**

The administrative record for the suit for judicial review underlying the instant case contains only the following four documents: (1) Board's Amended Final Order; (2) Respondent's Motion for Rehearing; (3) Staff Memorandum to Board Members on Motion for Rehearing; and (4) Notice to Respondent Overruling Motion for Rehearing.

Mr. Dass filed a motion seeking to have the Board file with the district court the transcript from the contested case hearing underlying the first suit for judicial

14

review. *See* Mot. for Def. to File SOAH Tr. with Dist. Clerk, dated Apr. 21, 2014, C.R. at 59-61. The Board opposed this motion. C.R. at 99-202. Then, on April 22, 2014, Mr. Dass filed an assortment of documents including offers made by Board staff to settle the case that was the subject of his first suit for judicial review.[9] None of these documents were part of the administrative record, and the district court properly granted the Board's motion to strike these documents.

The district court denied both Mr. Dass's motion to supplement the record with the SOAH transcript and PFD and his supplemental motion seeking the same supplementation.  C.R. at 316, 318. The court also granted the Board's Amended Motion to Strike. C.R. at 317.

Mr. Dass then filed a bill of exception, seeking to have this Court determine whether the administrative record in the first suit could be considered by the Court. Supp. C.R. II at 12-13.

---

[9]     The District Clerk *sua sponte* included these documents in the Clerk's Record. The documents are labelled C.R. 62-84. Because these documents are not properly before the Court, the Board respectfully requests that the Court disregard these documents.

## SUMMARY OF THE ARGUMENT

Mr. Dass failed to raise as an issue in the instant appeal whether the district court properly granted the Board's summary judgment motion, dismissing Mr. Dass's suit. Mr. Dass has, therefore, waived this point of error, and the Court should affirm the district court's order dismissing Mr. Dass's suit. But even on the merits, the trial court properly granted the Board's motion for summary judgment.

No other issue is properly before this Court. Mr. Dass's Issues Nos. 1-6 were not raised in his response to the Board's motion for summary judgment and are waived. Moreover, Mr. Dass failed to raise his purported Issue Nos. 1, 2, and 3 in the district court, and these issues are thus further waived. As for his Issue No. 4, while Mr. Dass claims to have raised issue 4 in his motion for rehearing, if he did raise this issue, he failed to provide a legal basis for doing so and thus waived the issue on appeal. Also, his Issues Nos. 5 and 6, in which he claims lack of substantial evidence to support findings of fact and conclusions of law, were already ruled on by the district court in the first suit for judicial review, and by dismissing his first appeal Mr. Dass is thus precluded from raising these issues in the instant appeal. And he failed to raise as an issue the exclusion of evidence.

## STANDARD OF REVIEW

A district court properly grants a traditional motion for summary judgment when a movant establishes that there are "no genuine issue[s] of material fact" and

that the movant is entitled to judgment as a matter of law. *Lear Sieglar, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991)). Summary judgment in response to a "no-evidence" motion is proper when the nonmovant fails to produce evidence "raising a genuine issue of material fact." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curium).

## ARGUMENT

**I.     The only issue before this Court is whether the district court properly granted the Board's motion for summary judgment, dismissing Mr. Dass's lawsuit; however, because Mr. Dass has failed to raise this issue in his Appellant's Brief, he has waived error.**

**A.     Mr. Dass has waived error, and the Court should affirm the district court's granting of the Board's motion for summary judgment.**

When a party's brief "wholly fail[s] to raise any issues, arguments, or citations to the record with respect to the trial court's summary judgment in favor of [the appellee], he has waived error as to the judgment in favor of that defendant." *Carpenter v. First Tex. Bancorp*, No. 03-12-00004-CV, 2014 WL 2568494, at *1 (Tex. App.—Austin June 5, 2014, pet. filed) (holding that appeal of granting of summary judgment waived where nonmovant-appellant failed to raise on appeal issue of summary judgment regarding one of two defendants) (citing Tex. R. App. P. 38(f), (i)).

The appeal before this Court concerns only the district court's summary judgment. Order Granting Def.'s Mot. for Summ. J. (having considered Board's motion and Mr. Dass's response), C.R. at 465. The court rendered judgment, granting the motion in all respects and denying all other relief, and the judgment was final and appealable. *Id.* Mr. Dass filed appeal of the summary judgment. Notice of Appeal, C.R. at 471. In his brief on appeal, however, Mr. Dass has failed to assert that the district court erred by granting the Board's motion for summary

judgment, and he has thus waived error. The Court should, therefore, affirm the district court's order granting summary judgment.

Even when a party does raise on appeal the granting of summary judgment, the appellant must provide adequate briefing. *See, e.g.*, *Concho Residential Servs., Inc. v. MHMR Servs. for the Concho Valley*, No. 03-98-00022-CV, 1999 WL 644727, at *19-20 (Tex. App.—Austin Aug. 26, 1999, pet. denied) (affirming district court's granting of summary judgment when appellant-nonmovant failed to address grounds asserted for summary judgment by appellee-movant); *Crider v. Crider*, No. 01-10-00268-CV, 2011 WL 2651794, at *[4] (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. denied) (mem. op.) ("A party who fails to support his or her contentions with authority or citations to the record when appropriate waives the issue due to inadequate briefing."). Here, Mr. Dass fails to challenge any of the possible bases for the district court's granting of the summary judgment, and, so, he has waived error.

### B. Even on the merits, the district court properly granted the Board's motion for summary judgment.

The reviewing court will "take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor." *John Gannon, Inc. v. Gunnarson Outdoor Adver., Inc.*, No. 03-08-00404-CV, 2010 WL 3192536, at *2 (Tex. App.—Austin Aug. 11, 2010, pet. denied)

19

(citing *Centeq Realty Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). Because the court did not specify the exact ground for granting the Board's summary judgment, Mr. Dass has the burden to "negate all grounds on appeal." *Id.* (noting that "if summary judgment may have been granted, properly or improperly, on a ground that an appellant does not challenge, we must affirm it"). Here, the Board raised three possible reasons the court should grant summary judgment: (1) failure to preserve error by filing an inadequate motion for rehearing; (2) res judicata or collateral estoppel; or (3) that the Board's Amended Final Order conformed to the Final Order in the first suit for judicial review.

### 1. Mr. Dass's second motion for rehearing failed to preserve error.

The Board issued an Amended Final Order, and Mr. Dass timely filed a motion for rehearing, which was overruled by operation of law. *See* Am. Final Order, C.R. at 223-27; Mot. for Reh'g, C.R. at 380-406. Mr. Dass then filed his second suit for judicial review asking the district court to review the Board's Amended Final Order.

Under the Administrative Procedure Act, as a prerequisite to judicial review, a litigant must file a motion for rehearing with the agency. Tex. Gov't Code §§ 2001.145, .146. The rationale behind this requirement is to give the agency an opportunity to correct or defend any errors claimed by the litigant. *Suburban Util.*

20

*Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 365 (Tex. 1983). But a motion for rehearing is not a mere legal formality prior to judicial review. Because the motion is designed to give the agency notice, it must carry certain substance. Specifically, the motion must identify the erroneous action taken by the agency, and analyze the legal basis for the claim of error. *Hamamcy v. Tex. State Bd. of Med. Exam'rs*, 900 S.W.2d 423, 425 (Tex. App.—Austin 1995, writ denied).

A motion for hearing must "set forth succinctly at least two elements pertaining to *each* contention of error: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Burke v. Cent. Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ("Without these irreducible elements, we do not conceive that any assignment of error will apprise the agency of the error claimed so that it may correct the error or prepare against the contention that it is error.").

Mr. Dass's motion for rehearing, however, failed to satisfy either element. *See* Mot. for Reh'g, C.R. at 380-406. For example, the first three pages consisted only of a recitation of facts and his interpretation of those facts; Mr. Dass also failed to state any legal or statutory basis for his general assertion that the Board came to the wrong conclusion. *Id.* His points of error did not refer to any conclusions of law or legal principles and were so broad that they provided no

21

notice to the Board to allow it to correct or defend against the contention of error. Moreover, the motion failed to provide any legal basis on which the unspecified errors rested. *See Burke*, 725 S.W.2d at 397; *see also Hamamcy*, 900 S.W.2d at 425 (holding that "a motion for rehearing can be so indefinite, vague, and general so as to constitute no motion for rehearing at all"); *Hill v. Bd. of Trs.*, 40 S.W.3d 676, 678 (Tex. App.—Austin 2001, no pet.) (adequacy of motion for rehearing goes to question of whether plaintiff had preserved error).

Such was Mr. Dass's "motion." In his seven points of error, he only cited to one finding of fact, no. 17, and only quoted it, never stating why it might support his motion or amount to an error by the Board. (Point 2) He complained that the Board members interrupted him (Point 7); he asserted he was not responsible (Point 6) and that Board members ignored his "strong exceptions" (Point 4); and, he made some general complaints about Board policy (Point 1), Board interpretation of engineering concepts (Point 3), and made a general complaint that the Board failed to understand why his seal was on the reports (Point 5).

His motion was nothing more than a general attack, among other matters, on the Board's 2005 Policy Advisory Opinion on Construction Materials Testing ("CME Advisory Opinion"), copy attached at **Appendix 9**. Rather than stating the specific errors in the Board's Amended Final Order and explaining the legal basis for the alleged errors, as required in a motion for rehearing, Mr. Dass focused

22

much of his motion for rehearing on identifying alleged deficiencies in the CME Advisory Opinion. *See* C.R. at 380-406. The Findings of Fact and Conclusions of Law in the Board's Amended Final Order did not rely on or address this 2005 Advisory Opinion. *See* C.R. at 223-27. Moreover, Mr. Dass had previously raised this issue at the contested case hearing, and the ALJ dismissed this argument as erroneous. *See* PFD at page 12, C.R. at 343-59.[10]

Mr. Dass's points of error alleging bias and unfairness by the Board members were entirely baseless. At all stages of the proceeding, Mr. Dass was afforded due process and opportunities to address the Board when appropriate. Mr. Dass's claim that the Board acted in a biased and unfair manner, simply because it disagreed with Mr. Dass' arguments, lacked a valid legal basis for a rehearing.

Not only did Mr. Dass's motion fail to provide notice to the Board, it failed as a substantive motion altogether. The motion for rehearing elements "may not be supplied solely in the form of generalities." *Burke*, 725 S.W.2d at 397. *See also Williams v. Geeslin*, No. 03-05-00450-CV, 2006 WL 2032570 (Tex. App.—Austin July 21, 2006, no pet.) (mem. op.) (holding that trial court properly granted summary judgment for agency in suit for judicial review because motion for rehearing was insufficient to preserve any error).

---

[10]     "Based on the plain reading of the CME Advisory Opinion, the ALJ finds it sufficiently informative to put a professional engineer on notice that material testing for a public works project requires the involvement of a licensed engineer and compliance with the [Professional Services Procurement Act] and corresponding Board rules."

Mr. Dass had a statutory obligation to apprise the Board of the alleged errors of which he intended to complain in his suit for judicial review and the legal basis for his challenge. Because he failed to provide the Board with the opportunity to correct or defend any error, he failed to preserve error through his purported motion for rehearing. *See Suburban*, 652 S.W.2d at 365. He did not establish the statutory prerequisites to go forward with his lawsuit; the district court correctly granted summary judgment because Mr. Dass had no viable cause of action. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

**2.    When Mr. Dass dismissed his first appeal, the doctrines of res judicata and collateral estoppel precluded Mr. Dass from relitigating those same claims.**

"Res judicata generally bars claims or defenses that, through diligence, could have been litigated in the earlier suit but were not." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206 (Tex. 1999); *see also Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 448 (Tex. 2007) (conversely res judicata will not bar "claims that cannot be litigated through diligence"). The doctrines of res judicata and collateral estoppel maintain the integrity of court decisions, prevent vexatious litigation, and maximize judicial economy. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 629 (Tex. 1992).

24

Res judicata requires: (1) "a prior final judgment on the merits by a court of competent jurisdiction"; (2) "identity of parties or those in privity with them"; and (3) "a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). To invoke collateral estoppel, a party must establish (1) "the facts sought to be litigated in the second action were fully and fairly litigated in the first action"; (2) "those facts were essential to the judgment in the first action"; and (3) "the parties were adversaries in the first action." *Sysco Food Servs. Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). *See also United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966) (holding that res judicata may be applied in the administrative context when an administrative agency is acting in a judicial capacity; res judicata bars subsequent litigation following the agency's decision).

The elements for res judicata and collateral estoppel were met in this case. The parties in the case were identical to the parties in the first suit for judicial review. The first suit for judicial review was properly filed in Travis County District Court, which rendered a Final Judgment. *See* Final J., C.R. at 365-66. In the Final Judgment, the court ruled that Findings of Fact numbers 16 and 17 and Conclusion of Law number 8 in the Board's Final Order were not supported by substantial evidence. *See* C.R. at 365-66. The district court also ruled that "the

remaining findings of fact and conclusions of law in the Board's Final Order are supported by substantial evidence." *See* C.R. at 365-66.

The Board did not appeal the Final Judgment. Rather, at its next quarterly board meeting, the Board adopted an Amended Final Order that conformed with the Final Judgment by striking Findings of Fact numbers 16 and 17 and Conclusion of Law number 8. C.R. at 223-27 The Board also reduced the administrative penalty assessed against Mr. Dass from $4,000 to $1,500. *See* C.R. at 223-27. The Board made no other changes to the original Final Order.

Mr. Dass, again acting pro se, appealed this final judgment but then withdrew that appeal. *See* Notice of Appeal, dated Oct. 23, 2013, copy at **App. 8**. A mere twelve days after the Board approved the Amended Final Order, Mr. Dass withdrew his appeal because he "believe[d]" the appeal "ha[d] become moot due to the amended Final Order from Appellee." *See* Mr. Dass's Mot. to Withdraw Appeal, dated Dec. 3, 2013, C.R. at 370-78. The Third Court of Appeals granted Mr. Dass's motion to dismiss his appeal. C.R. at 379.

When Mr. Dass abandoned his appeal, he lost his opportunity to challenge both the findings of fact and conclusions of law made by the Board and the district court's ruling that the remaining findings of facts were supported by substantial evidence became final.

In the second suit for judicial review of the same agency decision, Mr. Dass failed to state that he raised any additional or new issues in his second suit. Mot. for Reh'g, C.R. at 380-406.

### 3. The Board's Amended Final Order complied with the Final Judgment in the first suit.

Because Mr. Dass dismissed his first appeal, and raised no new issues in his second suit for judicial review, the only live issue in the second suit was whether the Board's Amended Final Order conformed with the Final Judgment in the first suit for judicial review. A side-by-side comparison of the original Final Order and the Amended Final Order shows that in the Amended Final Order the Board only deleted Findings of Fact 16 and 17 and Conclusion of Law No. 8 and reduced the penalty. *Compare* Am. Final Order, C.R. at 223-27, *with* Final Order, copy at **App. 6**. Therefore, the district court could properly grant the Board's motion for summary judgment under this third reason.

Because Mr. Dass fails to challenge these three possible bases for the court's granting summary judgment, the judgment should be affirmed.

## II. Mr. Dass fails to preserve error for his Issues Nos. 1-6 and his bill of exception issue.

Mr. Dass has waived his Issues Nos. 1-6 for three reasons. First, Mr. Dass's Issues Nos. 1 to 6 are waived because these issues were not raised in his response to the Board's motion for summary judgment. *See* Tex. R. Civ. P. 166a(c) ("Issues

27

not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (noting that when challenging a summary judgment appellant may only raise for first time on appeal issue of legal sufficiency). *See also Krot v. Fid. Nat'l Title Co.*, No. 03-14-00250-CV, 2014 WL 7464084, at *2 n.2 (Tex. App.—Austin Dec. 31, 2014, no pet. hist.) (mem. op.) (argument made for first time on appeal waived because nonmovant "failed to assert" the argument "as a bar to summary judgment" in its trial court briefing in responding to appellee's motion for summary judgment); *Schanzle v. JPMC Specialty Mortg.*, No. 03-09-00639-CV, 2011 WL 832170, *3 (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem. op.) (issue waived "because it was not properly presented to the trial court as . . . ground for denying summary judgment"). *See* Resp. to Def.'s Mot. for Summ. J., C.R. at 407-15.

Second, Mr. Dass failed to raise these issues in his suit for judicial review. *See* Mot. for Reh'g, C.R. at 380-406. And third, Mr. Dass's Issues Nos. 1-6 all relate to issues in the original Final Order. When Mr. Dass withdrew his first appeal of the first suit for judicial review that judgment became final and he was precluded from raising these issues in a later suit.[11]

---

[11] *See generally Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 185 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

**A.** **Mr. Dass also waived his Issues Nos. 1, 2, and 3 because he failed to raise these issues in either his motion for rehearing or district court, and these three issues do not implicate subject-matter jurisdiction.**

None of Mr. Dass's issues implicate subject-matter jurisdiction; and, therefore, because he failed to raise these issues in the district court, or in his motion for rehearing, he has waived his ability to raise these issues on appeal. As to his first issue, Mr. Dass fails to show that the Board violated Texas Government Code section 2001.1775, or, alternatively, how an erroneous order is somehow automatically void and not just subject to reversal upon challenge—the latter which potential issue he waived by failing to raise this issue in the district court.

In his Issues Nos. 2 and 3, Mr. Dass erroneously conflates subject-matter jurisdiction with a suit for judicial review regarding the scope of an agency's regulatory powers. *See* Tex. Gov't Code § 2001.174(2)(B) (in a suit for judicial review a court "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . in excess of the agency's statutory authority"). He asserts, without citing any authority, that his 2001.174(2)(B) claims implicate subject-matter jurisdiction; they do not. *See* Dass Br. 11, 16. Rather, subject-matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the

conduct of persons or the status of things." Black's Law Dictionary 870 (8th ed. 2004).[12]

If, in a suit for judicial review, a party contends that the agency exceeded its statutory authority, the only available remedy is for the district court to either "*reverse or remand* the case." Tex. Gov't Code § 2001.174 (emphasis added). *See also, e.g.*, *SWEPI LP v. R.R. Comm'n*, 314 S.W.3d 253, 259 (Tex. App.—Austin 2010, pet. denied) (reversal by district court is proper remedy); *Tex. Gen. Land Office v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130 (Tex. App.—Austin 2014, pet. filed) (same).

Mr. Dass also fails to cite any authority for his request that the Court find the Amended Final Order void. Indeed, the remedy the Court could grant Mr. Dass would be to remand to the Board for further proceedings. *See* Tex. Gov't Code § 2001.174; *see also, e.g.*, *Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 109 S.W.3d 130, 137-38 (Tex. App.—Austin 2003, no pet.) (holding that

---

[12] The two cases Mr. Dass cites in support of this argument are inapposite. In *TEC*, the issue was whether the district court was without jurisdiction where the amount in controversy exceeded the maximum allowed for the court to have jurisdiction. *Tex. Emp't Comm'n v. Int'l Union of Elec., Radio & Mach. Workers, Local Union No. 782*, 352 S.W.2d 252, 253 (Tex. 1961). And in *Mapco*, the court held that a party may raise for the first time on appeal the jurisdictional issue of whether the "owelty award entered against it was erroneous because it was not a party in the trial court"). *Mapco, Inc. v. Carter*, 817 S.W. 686, 687 (Tex. 1991). Neither case discusses, or relies on, section 2001.174.

trial court not authorized to vacate order when agency exceeded its authority, where section 2001.174 authorizes only reversal or remand).

A party waives error on appeal when it fails to raise the issue in the trial court. *Loftin v. Lee*, 341 S.W.3d 352, 356 n.11 (Tex. 2011); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim . . . must have been asserted in the trial court in order to be raised on appeal."); *see also Carrizales v. Tex. Dep't Prot. & Reg. Servs.,* 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied) (quoting *Dreyer*, 871 S.W.2d at 698). Because Mr. Dass failed to raise these two issues in either his motion for rehearing or in the district court—by adding, for example, a cause of action for either declaratory or injunctive relief, the Court should overrule his Issue Nos. 2 and 3. *See, e.g.*, *Pub. Util. Comm'n v. Allcomm Long Distance, Inc.*, 902 S.W.2d 662, 666 (Tex. App.—Austin 1995, writ denied) (where party alleges that agency acted beyond the scope of its statutorily conferred powers, suit for declaratory or injunctive relief [filed in the trial court] will lie). Here, Mr. Dass suggests he failed to brief his Issue Nos. 2 and 3 in the district court; and these issues, therefore, are waived. *See* Dass Br. 11, 16 n.3. Because of this failure to raise these issues in his suit for judicial review, the Court should overrule Mr. Dass Issues Nos. 1, 2, and 3. *See Carrizales*, 5 S.W.3d at 925.

**1. Mr. Dass's Issue No. 1 is waived because even if the Board's issuance of the Amended Final Order was erroneous, Mr. Dass failed to raise this issue in his motion for rehearing.**

For the first time, Mr. Dass, in his Appellant Brief to this Court, asserts that Texas Government Code section 2001.1775 has been violated. Dass Br., C.R. at 7-10. Even if the Amended Final Order was issued in violation of Texas Government Code section 2001.1775, this error does not make the Amended Final Order void. An order is void if it is rendered by a body that lacked jurisdiction to render it. Here, the Board had jurisdiction to render the Amended Final Order. If the Amended Final Order was issued erroneously, Mr. Dass had a duty to raise that error in both his motion for rehearing and his second suit for judicial review. Mr. Dass provides only conclusory arguments for his assertion that the Amended Final Order is somehow void and also fails to provide any explanation or substantiation as to why an order issued in violation of section 2001.1775 is void.

Section 2001.1775 states that "an agency may not modify its findings or decision in a contested case after proceedings for judicial review of the case have been instituted under section 2001.176 and during the time that the case in under judicial review." Tex. Gov't Code § 2001.1775. Mr. Dass does not cite any

authority for the proposition that an order issued in violation of section 2001.1775 is void.[13]

After a hearing on the merits in the first suit for judicial review, the court issued the Final Judgment, in which the court concluded that "Findings of Fact Nos. 16 and 17 and Conclusion of Law No. 8 in the Board's Final Order [we]re not supported by substantial evidence." C.R. at 365. The court also ruled that the "remaining findings of facts and conclusions of law in the Board's Final Order are supported by substantial evidence" and remanded the matter to the Board "for any further action it deem[ed] appropriate given the ruling." *Id.* The Final Judgment "finally dispose[d] of all claims and all parties, and is final and appealable." *Id.*

The Board then issued the Amended Final Order. C.R. at 223-27. This order, in following the court's ruling contained in the Final Judgment, deleted Findings of Fact Nos. 16 and 17 and Conclusion of Law No. 8. And while the court found that the sanction and administrative penalty were supported by substantial evidence, the Board, on its own volition, reduced the penalty from $4,000 to $1,500. The Board made no other modifications.

---

[13] The three cases Mr. Dass cites are inapplicable because none rely on or relate to Texas Government Code section 2001.1775. *See Tex. Highway Comm'n v. Tex. Ass'n of Steel Importers*, 372 S.W.2d 525, 530 (Tex. 1963) (holding that minute orders made contract void); *Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied) (addressing statutory permitting requirements of the Texas Natural Resources Commission); *City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 403 (Tex. App.—Austin 2008, no pet.) (relying on water code).

The only point of error that Mr. Dass might raise is whether the Board's reduction of the penalty in the Amended Final Order was in violation of section 2001.1775. The district court, however, found that the penalty of $4,000.00 was supported by substantial evidence; the Board merely reduced the penalty by $2,500—from $4,000 in the original Final Order to $1,500. An error regarding this reduction is either waived or is harmless. When Mr. Dass dismissed his appeal of the Final Judgment, he waived any appeal from the Final Order. Moreover, he failed to raise as an issue in his motion for rehearing in the second suit the Board's change in the penalty amount in the Amended Final Order. Therefore, even if he could have raised the penalty amount in the second suit, he did not preserve this issue for review. Alternatively, this reduction in penalty, even if it were a violation of section 2001.1775 is harmless because the Board *reduced* the penalty assessed against Mr. Dass.

At most, the Amended Final Order was erroneous; Mr. Dass, however, waived this issue, and the Court should, therefore, overrule Mr. Dass's Issue No. 1.

2. **Although Mr. Dass's Issue No. 2 is waived, even on the merits Mr. Dass's argument would fail to show how the Board may not fix responsibility for services performed in the practice of engineering.**

The purpose of the Texas Engineering Practice Act is to "protect the public health, safety, and welfare" and "fix responsibility for work done or services or

acts performed in the practice of engineering." Tex. Occ. Code §§ 1001.004(b)(1), (3). The Board found that Mr. Dass violated a provision regarding bidding on a public works project, failing to oversee tests conducted to create reports, and failing to prevent Trinity Soils Lab from submitting the reports without the signature and seal of its licensed engineer Mr. Dass. *See* PFD, C.R. at 225.

Mr. Dass makes several erroneous assertions in his argument regarding his second issue. *See* Dass Br.10-15. First, the Board's Amended Final Order was not wholly dependent on or limited to construction material testing. One of the violations was Mr. Dass's failure to prevent competitive bidding by his engineering firm, Trinity Soils Testing. Conclusion of Law No. 7, C.R. at 226.

### a. Broad definition of "practice of engineering."

The term "practice of engineering" is broad. *See* Tex. Occ. Code § 1001.003(b) ("'practice of engineering' means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work."). The practice of engineering also "includes . . . consultation, investigation, evaluation, analysis, planning, . . . engineering for testing or evaluating materials for construction or other engineering use"). Tex. Occ. Code § 1001.003(c)(1). The list activities that

35

the Legislature considers engineering services includes a catchall provision: the practice of engineering "includes . . . any other professional service necessary for the planning, progress, or completion of an engineering service." Tex. Occ. Code § 1001.003(c)(12). Also, the Act "shall be liberally construed to carry out the intent of the legislature." Tex. Occ. Code § 1001.004(d).

Mr. Dass's narrow interpretation of section 1001.003, or his assertion the Board has no authority to determine the scope of construction materials engineering testing ("CME"), is not supported by the plain language of the statute or the intention of the Legislature for the Board to liberally construe the Act in enforcing policy. *See* Dass Br. 12-14.

### b.     CME and the reports.

CME "includes collecting samples, performing well-defined test procedures, and reporting of data." CME Advisory Opinion, Aug. 20, 2009, at p. 1, copy attached at **App. 9**.  "On construction projects, engineers are called upon to assess the quality, appropriateness and acceptability of the materials that are used." *Id.* Construction materials testing ("CMT"), "within the context of CME includes collecting samples, performing well-defined test procedures, and reporting of data." While CMT typically falls within the scope of CME activities, sometimes CMT is not considered a CME activity. CME Advisory Opinion, at p. 1, at **App. 9** ("In certain situations, performing tests and sampling by using well-defined

36

engineering specifications may not be considered engineering activities."). Nevertheless, "if analysis of test data [i.e., CMT] is done or a determination is made that a material is acceptable, these activities would be considered to be CME." *Id.* The last sentence of the fourth paragraph is of particular importance: "Because the engineer is responsible for accepting the public works project, acceptance or rejection of materials or work, the direct supervision by an engineer of CMT for those acceptance decisions is needed." *Id.* This sentence means that the engineer, in the instant case Mr. Dass, should have directly supervised the testing because he had responsibility as the sole engineer for Trinity Soils Lab to analyze the test data performed and gathered by the non-engineer Mr. Tater, and thus ensuring that the engineering aspect of the work was properly done by an engineer (and not by Mr. Tater a non-engineer). In sum, the non-engineer could run or perform the tests, but the licensed engineer had to analyze the data.

Under the broad definition of "engineering service," the Board's clarification of the relationship between CME and CMT, as articulated in its CME Advisory Opinion, is well within the Board's authority. Moreover, the Board's determination that the reports conducted by Trinity Soils Lab was CME was well within the Board's discretion to determine. The ALJ ruled that the Board's

determination was correct, and the district court found substantial evidence for the ALJ's findings and conclusions. *See* PFD, C.R. at 343-59; Final J., C.R. at 365.[14]

The Court should, if it reaches the merits of Mr. Dass's second issue, overrule the issue.

> **3. Although Mr. Dass's Issue No. 3 is waived, even on the merits the ALJ correctly ruled that Mr. Dass failed to follow the legally required bidding process for a public works project.**

The Act states that a political subdivision of the state "may not construct a public work involving engineering in which the public health, welfare, or safety is involved, unless . . . the engineering plans, specifications, and estimates have been prepared by an engineer. Tex. Occ. Code § 1001.407(1). Additionally, a licensed engineer may not "submit or request" a "competitive bid to perform professional engineering service" unless specifically authorized. 22 Tex. Admin. Code § 137.53(a) (Engineer Standards of Compliance with Professional Services Procurement Act). Competitive bidding includes "submission of any monetary cost information in the initial step of selecting engineers. *Id.* at (b). The PSPA applies to counties and professional engineering services provided by a professional engineer. Tex. Gov't Code §§ 2254.002(1)(B), (2)(A)(vii), (2)(B)(vii). A county

---

[14] Mr. Dass's mischaracterizes Findings of Fact Nos. 5 and 7 when he asserts that only CMT was performed. Dass Br. at 15 n.2 & 3. Rather, the ALJ found that Mr. Dass violated the Act when he failed to oversee the testing done to create the reports. Conclusion of Law No. 5, C.R. at 226.

may only select a provider based on qualifications, and then attempt to negotiate a "fair and reasonable price." Tex. Gov't Code §§ 2254.004(a)(1), (2).

Here, the ALJ found that Mr. Dass had violated the Board's rules when he failed to "exercise reasonable care and diligence to prevent [Trinity Soils Lab] from submitting a competitive bid for professional engineering services in violation of the PSPA." Conclusion of Law No. 5, C.R. at 226 (citing Board rule 137.63(b)(2)).[15] And the district court ruled that substantial evidence supported this conclusion of law. Final J., C.R. at 365. The Board did not act outside the authority, indeed responsibility, the Legislature granted the Board. If the Court should reach the merits of Mr. Dass's third issue, the issue ought to be overruled.

## B. Mr. Dass has waived his right to complain of the CME Advisory Opinion (Mr. Dass's fourth issue).

For the same reasons cited above for Mr. Dass's second and third issues, his fourth issue is not properly before the Court. Mr. Dass claims he raised his issue regarding the CME Advisory Opinion in his motion for rehearing; however, as the Board noted in section I, *supra*, his motion for rehearing was so vague and indefinite so as to not preserve error. *Burke*, 725 S.W.2d at 397. For the first time, Mr. Dass states a legal basis for his issue, section 2001.174.

---

[15] The paragraph on pages 17-18 of Mr. Dass's brief lacks citation, and the assertions seem to be based on documents and evidence not properly before the Court.

Also, Mr. Dass ought to have brought this point of error in his first appeal; but because he dismissed his first appeal, he has waived his right to bring this point of error in the instant appeal.

However, even if Mr. Dass had not waived his point of error, it fails on the merits. The Legislature tasked the Board with the duty of issuing advisory opinions. Tex. Occ. Code § 1001.601(a) ("On its own initiative or at the request of any interested person, the board shall prepare a written advisory opinion about (1) an interpretation of this chapter; or (2) the application of this chapter to a person in regard to a specified existing or hypothetical factual situation."). *See also* 22 Tex. Admin. Code §§ 131.101 (Subject of an Advisory Opinion), .103 (Request for an Advisory Opinion), .105 (Board Initiated Opinion) ("When a majority of the board determines that an opinion would be in the public interest or in the interest of any person or persons within the jurisdiction of the board, the board may on its own motion issue an advisory opinion.").

The Board also must "number and classify each advisory opinion" and "annually compile a summary of the opinions in a single reference document that is available on the Internet." Tex. Occ. Code § 1001.602(1), (2); *see also* 22 Tex. Admin. Code § 131.109 (Compilation of Advisory Opinions).

Mr. Dass cites to no particular sentence or section of the CME Advisory Opinion that supports his assertion that it is a rule.[16] Indeed, the majority of his complaint is that the CME Advisory Opinion is too vague. The Board issued the CME Advisory Opinion as a clarification of the Act and Board rules. Thus, the Board did not act in violation of section 2001.174 when it prepared the CME Advisory Opinion.

### C. Mr. Dass has also waived his fifth and sixth issues because his complaint that the substantial evidence standard was not met must have been brought in his first appeal, which he withdrew.

Mr. Dass complains that there was not substantial evidence to support the ALJ's finding that testing that Mr. Dass failed to oversee was CMT and not CME. (Mr. Dass's fifth issue). Dass Br. 21-23. Mr. Dass then complains that the Board ought to have sought sanctions and penalties against the engineer who worked for the principal engineering firm overseeing the Project. Dass Br. 23-26.

Regarding Mr. Dass's fifth issue, he seems to be making the same argument as in his second issue—that the reports he failed to oversee and to which he added his signature and seal after the reports had already been submitted to the principal engineering firm, only involved CMT and not CME. For the reasons stated above

---

[16]    And he fails to explain how the cases he cites relate to the facts in this case. *See Tex. State Bd. of Pharm. v. Witcher*, 447 S.W.3d 520, 527 (Tex. App.—Austin 2014, pet. filed) (regarding policy specific to that particularly agency regarding indefinite suspension of license); *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008) (HHSC violated rule regarding review of individual claims data).

in section II.A.1, the ALJ ruled that the Board had shown by a preponderance of the evidence that Mr. Dass had committed at least three violations of the Board's rules. The ALJ heard all the evidence and the testimony of live witnesses, including Board witnesses and others from the San Patricio area, such as the engineer in charge of the project Mr. Shrier, and held that the Board had proven its case by a preponderance of the evidence. The Board adopted the ALJ's findings of fact and conclusions of law in its original Final Board Order. *See* Final Order, copy at **App. 6**.

Moreover, regarding his sixth issue, Mr. Dass fails to provide any citation to the record before this Court. And, his argument disregards this essential fact: Mr. Dass, and not the Project Engineer in charge (who was a totally different person not employed by Mr. Dass's firm), is the person who, after the reports were prepared by a non-engineer employee of Trinity Soils Lab, signed his name to the reports, the same reports he also admitted he did not directly supervise. In fact, Mr. Dass testified he did not even know his company was engaged in preparing reports for the San Patricio project, but he signed and sealed the reports anyway. *See* FoF Nos. 9, 11, 12, 13, 14, 15, and 16, C.R. at 223-27. The district court in the first suit for judicial review found that substantial evidence existed to support three of the violations the ALJ found Mr. Dass committed. *See* Final J., at C.R. at 365. When

Mr. Dass dismissed his first appeal, he waived the right to attack the Final Judgment and the Board's Amended Final Order.

> **D. Because Mr. Dass failed to brief his issue regarding the exclusion of evidence and has thus waived this point of error, the Court should not consider documents not properly before the Court.**

When a party complains of the exclusion of evidence, an appellate court reviews the decision for an abuse of discretion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 576 (Tex. 2006) (holding that the trial court did not abuse its discretion in denying bill of exception and excluding evidence). Mr. Dass's bill of exception sought to include in the record before this Court the administrative record from the first suit for judicial review. Bill of Exception, Supp. C.R. II at 12-13. Mr. Dass, however, failed to brief the issue to this Court and explain why the district court erred in excluding the administrative record from the first suit for judicial review. There was no fundamental error in the district court's exclusion of the first administrative record because Mr. Dass merely sought to relitigate the same issues in his second suit. And even if the issue of the evidentiary ruling were before this Court, there was no abuse of discretion in excluding the evidence. *See generally* section I, *supra*, regarding arguments in support of summary judgment. The Court should, therefore, hold that the administrative record from the first suit for judicial review is not properly before the Court and may not be considered.

43

## CONCLUSION AND PRAYER

Mr. Dass failed to raise on appeal the issue of whether the district court properly granted the Board's motion for summary judgment. Nevertheless, even on the merits, the district court's ruling was correct. Also, Mr. Dass waived his six issues on appeal and his bill of exception issue, and these issues should be overruled.

Appellee prays the Court will affirm the trial court's final order granting the Board's summary judgment motion, dismissing Mr. Dass's suit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

*/s/ Jennifer L. Hopgood*
JENNIFER L. HOPGOOD
State Bar No. 24073010
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4300
Facsimile: (512) 320-0167

jennifer.hopgood@texasattorneygeneral.gov

*Attorneys for the Texas Board of Professional Engineers*

## CERTIFICATE OF COMPLIANCE

I certify that the brief submitted complies with Texas Rules of Appellate Procedure 9 and the word count of this document is 9,628.

Date: May 6, 2015.

/s/ Jennifer L. Hopgood
JENNIFER L. HOPGOOD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on May 6, 2015, on the following by electronic service and by email:

Jimmy Alan Hall
Jimmy Alan Hall, P.L.L.C.
4600 Mueller Boulevard, Suite 2121
Austin, TX 78723-3372
Facsimile: (512) 857-9195
jahall@fbjah.com

J. Woodfin Jones
Alexander Dubose Jefferson
& Townsend LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Facsimile: (512) 482-9303
wjones@adjtlaw.com

*Counsel for Appellant*

/s/ Jennifer L. Hopgood
JENNIFER L. HOPGOOD

# **APPENDIX**

1. Order Granting Defendant's Motion for Summary Judgment, dated June 25, 2014.

2. Senate Research Center, Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003).

3. Senate Committee on Licensing & Administrative Procedures, Committee Report (Unamended), Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003).

4. Bill Summary, Tex. S.B. 277, 78th Leg. R.S., (2003).

5. Tex. S.B. 277, 78th Leg. R.S., (2003).

6. Final Order, dated Aug. 16, 2012.

7. Cover Letter for (Dass's) Initial Brief, dated Mar. 26, 2013.

8. Notice of Appeal, dated Oct. 23, 2013.

9. Texas Board of Professional Engineer's 2005 Policy Advisory Opinion on Construction Materials Testing, dated Aug. 20, 2009.

# Tab 1

Order Granting Defendant's Motion for
Summary Judgment, dated June 25, 2014

Notice sent: Final  Interlocutory  None
Disp Parties:_____
Disp code: CVD / CLS _____
Redact p.s.
Judge SAY ____ Clerk ____

Filed in The District Court
of Travis County, Texas

JUN 2 5 2014

At _____ 1:57 PM.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-14-000568

| | | |
|---|---|---|
| RAGHUNATH DASS, P.E., *Plaintiff,* | § § § | IN THE DISTRICT COURT |
| v. | § § § | TRAVIS COUNTY, TEXAS |
| TEXAS BOARD OF PROFESSIONAL ENGINEERS, *Defendant.* | § § § § § | 201ˢᵗ JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The Court considered on submission the Motion of Defendant Texas Board of Professional Engineers for Summary Judgment and the response filed by the Plaintiff.

After considering the motions, the admissible summary judgment evidence, and the matters and authorities presented, the Court finds that the Defendant's Motion should be and is hereby granted.

It is therefore ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment is GRANTED in all respects.

All relief not expressly granted is herein DENIED. This Order constitutes and is intended to be a final and appealable judgment, disposing of all parties and claims.

SIGNED this _25_ day of _JUNE_, 2014.

_____
The Honorable Stephen Yelenosky

# Tab 2

Senate Research Center, Bill Analysis, Tex.
S.B. 277, 78th Leg., R.S. (2003)

Senate Research Center
78R902 SMH-D

S.B. 277
By: Ellis, Rodney
Government Organization
3/31/2003
As Filed

## DIGEST AND PURPOSE

The Texas Board of Professional Engineers (TBPE) was established to license professional engineers, enforce the Texas Engineering Practice Act, resolve complaints and register engineering firms. As proposed, S.B. 277 continues TBPE for the standard 12-year period and strengthens the enforcement process to enhance public protection.

## RULEMAKING AUTHORITY

Rulemaking authority previously granted to the Texas Board of Professional Engineers is modified in SECTION 11 (Section 1001.203, Occupations Code), and granted in SECTION 12 (Section 1001.2035, Occupations Code), SECTION 17 (Section 1001.252, Occupations Code), SECTION 21 (Section 1001.304, Occupations Code), SECTION 26 (Section 1001.405, Occupations Code), and SECTION 27 (Section 1001.4525, Occupations Code) of this bill.

## SECTION BY SECTION ANALYSIS

SECTION 1. Amends Sections 1001.005 and 1001.051, Occupations Code, as follows:

Sec. 1001.005. Continues the Texas Board of Professional Engineers (TBPE) for the standard 12-year period until September 1, 2015.

Sec. 1001.051. Provides that an exemption under this subchapter applies only to a person who does not offer, rather than one who is not directly or indirectly represented, to the public to perform, rather than being legally qualified to engage in the practice of, engineering services.

SECTION 2. Amends Section 1001.057(c), Occupations Code, to provide that a person who claims an exemption under this section and who is determined to have offered to the public to perform engineering services may not claim an exemption until the 10th anniversary of the date the person made that offer.

SECTION 3. Amends Section 1001.058(c), Occupations Code, to make conforming changes.

SECTION 4. Amends Section 1001.101(b), Occupations Code, to update standard Sunset language requiring appointments to TBPE to be nondiscriminatory.

SECTION 5. Amends Section 1001.102(a), Occupations Code, to update standard Sunset language prohibiting certain persons from membership on TBPE.

SECTION 6. Amends Section 1001.103, Occupations Code, to update standard Sunset language relating to membership and employee restrictions.

SECTION 7. Amends Section 1001.106, Occupations Code, by amending Subsection (a) and adding Subsection (c), to update standard Sunset language relating to grounds for removal of a TBPE member.

SECTION 8. Amends Section 1001.108, Occupations Code, to require the governor to designate a member of TBPE as the presiding officer of TBPE to serve in that capacity at the will of the

governor. Deletes a reference to "presiding officer" from text.

SECTION 9. Amends Chapter 1001C, Occupations Code, by adding Section 1001.112, as follows:

Sec. 1001.112. TRAINING. Applies standard Sunset language relating to training of TBPE members.

SECTION 10. Amends Chapter 1001D, Occupations Code, by adding Sections 1001.153-1001.156, as follows:

Sec. 1001.153. DIVISION OF RESPONSIBILITIES. Applies standard Sunset language to require TBPE to develop policies that clearly separate the policy-making responsibilities of TBPE members and management responsibilities of TBPE staff.

Sec. 1001.154. QUALIFICATIONS AND STANDARDS OF CONDUCT INFORMATION. Updates standard Sunset language requiring information on standards of conduct to be provided to members of TBPE and TBPE staff.

Sec. 1001.155. EQUAL EMPLOYMENT OPPORTUNITY POLICY; REPORT. Applies standard Sunset language requiring the executive director to develop an equal employment opportunity program.

Sec. 1001.156. INFORMATION ON STATE EMPLOYEE INCENTIVE PROGRAM. Applies standard Sunset language requiring training on participation in the state employee incentive program.

SECTION 11. Amends Section 1001.203, Occupations Code, as follows:

(a) Requires TBPE by rule to prescribe standards for compliance with Chapter 2254A, Government Code.

(b) Provides that except as provided by Subsection (a), TBPE may not adopt rules restricting advertising or competitive bidding by a license holder except to prohibit false, misleading, or deceptive practices.

(c) Provides that in its rules to prohibit false, misleading, or deceptive practices, TBPE may not include certain rules.

SECTION 12. Amends Chapter 1001E, Occupations Code, by adding Section 1001.2035, as follows:

Sec. 1001.2035. RULES ON CONSEQUENCES OF CRIMINAL CONVICTION. Requires TBPE to adopt rules and guidelines as necessary to comply with Chapter 53.

SECTION 13. Amends Section 1001.204(a), Occupations Code, to require TBPE to establish certain fees in amounts reasonable and necessary to cover the costs of administering this chapter.

SECTION 14. Amends Section 1001.210, Occupations Code, to require TBPE, rather than to authorize it, to recognize, prepare, or administer continuing education programs for its license holders. Requires a license holder to participate in the programs to the extent required by TBPE to keep the person's license.

SECTION 15. Amends Chapter 1001E, Occupations Code, by adding Sections 1001.214-1001.216, as follows:

Sec. 1001.214. TECHNOLOGY POLICY. Applies standard Sunset language requiring TBPE to develop and implement a technology policy.

Sec. 1001.215. NEGOTIATED RULEMAKING AND ALTERNATIVE DISPUTE RESOLUTION POLICY. Applies standard Sunset language requiring TBPE to develop and implement a policy to encourage the use of negotiated rulemaking and alternative dispute resolution procedures.

Sec. 1001.216. JOINT ADVISORY COMMITTEE ON THE PRACTICE OF ENGINEERING AND ARCHITECTURE. (a) Provides that the Joint Advisory Committee on the Practice of Engineering and Architecture is an advisory committee to TBPE and to the Texas Board of Architectural Examiners (TBAE). Provides that the advisory committee consists of certain individuals.

(b) Provides that members of the advisory committee serve staggered six-year terms with the terms of one member appointed by TBPE and one member appointed by TBAE expiring each odd-numbered year.

(c) Requires the advisory committee to meet at least twice a year.

(d) Requires the advisory committee to work to resolve issues that result from the overlap between activities that constitute the practice of engineering and those that constitute the practice of architecture. Requires the advisory committee to assist each agency in protecting the public rather than advancing the interests of either agency or the profession it regulates.

(e) Requires the advisory committee to issue advisory opinions to TBPE and to TBAA on matters relating to the practice of engineering and the practice of architecture, including certain factors.

(f) Requires an agency, if the advisory committee issues an advisory opinion to TBPE or TBAE on a matter, to notify the committee of the final action taken with regard to the matter. Requires the advisory committee to consider the action taken by the agency on the matter in any advisory opinion subsequently issued by the committee on a related matter.

(g) Requires TBPE and TBAE to enter into a memorandum of understanding regarding the advisory committee that includes the composition and purpose of the committee.

SECTION 16. Amends Section 1001.251, Occupations Code, by adding Subsection (c), to require TBPE to maintain on TBPE's Internet website certain information.

SECTION 17. Amends Sections 1001.252 and 1001.253, Occupations Code, as follows:

Sec. 1001.252. GENERAL RULES REGARDING COMPLAINT INVESTIGATION AND DISPOSITION. Updates standard Sunset language regarding complaints and disposition.

Sec. 1001. 253. COMPLAINT INFORMATION. Updates standard Sunset language requiring information to be maintained on complaints.

SECTION 18. Amends Chapter 1001F, Occupations Code, by adding Sections 1001.254 and 1001.255, as follows:

Sec. 1001.254. STATISTICAL ANALYSIS OF COMPLAINTS. (a) Requires TBPE to develop and maintain a complaint tracking system to monitor the processing of complaints filed with TBPE.

(b) Requires TBPE to include with TBPE's annual financial report under Section 2101.011, Government Code, a statistical analysis of the complaints filed with

TBPE during the preceding year, including certain information.

Sec. 1001.255. PUBLIC PARTICIPATION. Applies standard Sunset language providing for public testimony meetings of the policymaking body.

SECTION 19. Amends Section 1001.301, Occupations Code, by amending Subsections (b) and (c) and adding Subsection (f), as follows:

(b) Makes a conforming change.

(c) Makes a conforming change.

(f) Provides that notwithstanding the other provisions of this chapter, a person who is exempt from the licensing requirements of this chapter is not prohibited from using the term "engineer" or a variation or abbreviation of that term as a professional, business, or commercial identification, title, name, representation, claim, asset, or means of advantage or benefit, including on a business card, cover letter, or other form of correspondence that is made available to the public, if the person does not offer to the public to perform engineering services. Provides that this subsection does not authorize a person to use a term listed in Subsections (b)(2)-(6) or a variation or abbreviation of one of those terms.

SECTION 20. Amends Section 1001.303, Occupations Code, to update standard Sunset language relating to an application for licensure.

SECTION 21. Amends Section 1001.304, Occupations Code, by adding Subsection (d), as follows:

(d) Requires TBPE by rule to ensure that the examination is administered to applicants with disabilities in compliance with the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12101 et seq.), and its subsequent amendments.

SECTION 22. Amends Sections 1001.306, 1001.310, and 1001.311, Occupations Code, to update standard Sunset language requiring notice regarding examination results to persons seeking TBPE licensure.

Sec. 1001.310. Updates standard Sunset language regarding temporary or provisional licensure.

Sec. 1001.311. Updates standard Sunset language regarding the application of a nonresident for licensure.

SECTION 23. Amends Section 1001.351(b), Occupations Code, to require TBPE, for the year in which the license or registration expiration date is changed, to prorate license or registration fees on a monthly basis so that each license or registration holder pays only that portion of the license or registration fee that is allocable to the number of months during which the license or registration is valid. Provides that on renewal of the license or registration on the new expiration date, the total license or registration renewal fee is payable.

SECTION 24. Amends Sections 1001.352 and 1001.353, Occupations Code, to update standard Sunset language regarding the notice of license expiration and the procedure for renewal.

SECTION 25. Amends Chapter 1001H, Occupations Code, by adding Section 1001.354, as follows:

Sec. 1001.354. RENEWAL OF EXPIRED LICENSE BY OUT-OF-STATE PRACTITIONER. (a) Authorizes a person who was licensed in this state, moved to another state, and is currently licensed and has been in practice in the other state for the two years preceding the date of application to obtain a new license without reexamination.

(b) Requires the person to pay to TBPE a fee that is equal to two times the normally required renewal fee for the license.

SECTION 26. Amends Section 1001.405, Occupations Code, by adding Subsection (g), to authorize TBPE by rule, notwithstanding the other provisions of this section, to provide that a business entity that has not previously registered with TBPE and that is engaged in the practice of engineering in violation of Subsection (b) is not subject to disciplinary action for the violation if the business entity registers with TBPE not later than the 30th day after the date TBPE gives written notice to the business entity of the registration requirement. Provides that this subsection does not apply to a business entity whose registration has expired.

SECTION 27. Amends Chapter 1001J, Occupations Code, by adding Sections 1001.4525-1001.4527, as follows:

Sec. 1001.4525. PROBATION. (a) Authorizes TBPE, if a person's license suspension is probated, to require the person to perform certain tasks.

(b) Requires TBPE by rule to adopt written guidelines to ensure that probation is administered consistently.

Sec. 1001.4526. RESTITUTION. (a) Authorizes TBPE, subject to Subsection (b), to order a person licensed or registered under this chapter to pay restitution to a consumer as provided in an agreement resulting from an informal settlement conference instead of or in addition to imposing an administrative penalty under this chapter.

(b) Provides that the amount of restitution ordered as provided in an agreement resulting from an informal settlement conference may not exceed the amount the consumer paid to the person for a service regulated by this chapter. Provides that the board may not require payment of other damages or estimate harm in a restitution order.

Sec. 1001.4527. RECUSAL OF BOARD MEMBER. (a) Provides that a TBPE member who participated in the investigation of a complaint or in informal settlement negotiations regarding the complaint:

(1) may not participate in the discussion of or vote on the matter at a board meeting related to the complaint; and

(2) must state at the meeting why the member is prohibited from participating in the discussion of or voting on the matter.

(b) Requires a statement under Subsection (a)(2) to be entered into the minutes of the meeting.

SECTION 28. (a) Requires TBPE, not later than January 1, 2004, to adopt the rules required by Section 1001.2035, Occupations Code, as added by this Act.

(b) Requires TBPE, not later than September 1, 2005, to adopt the written guidelines required by Section 1001.4525, Occupations Code, as added by this Act.

SECTION 29. (a) Effective date: September 1, 2003.

(b) Provides that the changes in law made by Sections 1001.102 and 1001.103, Occupations Code, as amended by this Act, and Section 1001.112, Occupations Code, as added by this Act, in the prohibitions on or qualifications of members of the Texas Board of Professional Engineers do not affect the entitlement of a member serving on the Texas Board of Professional Engineers immediately before September 1, 2003, to continue to

serve and function as a member of the Texas Board of Professional Engineers for the remainder of the member's term. Provides that those changes in law apply only to a member appointed on or after September 1, 2003.

(c) Provides that the change in law made by Section 1001.108, Occupations Code, as amended by this Act, does not affect the entitlement of a person who was serving as presiding officer of the Texas Board of Professional Engineers immediately before September 1, 2003, to continue to serve and function in that capacity for the remainder of the person's term as presiding officer. Provides that that change in law applies only to the designation of a presiding officer of the board after that person's term as presiding officer expires.

(d) Makes application to the changes in law made by this Act to Chapter 1001, Occupations Code, prospective.

# Tab 3

Senate Committee on Licensing & Administrative Procedures, Committee Report (Unamended), Bill Analysis, Tex. S.B. 277, 78th Leg., R.S. (2003)

S.B. 277
By: Ellis, Rodney
Licensing & Administrative Procedures
Committee Report (Unamended)

## BACKGROUND AND PURPOSE

The Texas Board of Professional Engineers was created in 1937, after an explosion at the New London School killed nearly 300 students and teachers. The Board's main functions include: licensing Professional Engineers; enforcing the Texas Engineering Practice Act, including investigating and resolving complaints; and registering engineering firms.

As part of the Self-Directed, Semi-Independent Licensing Agency Pilot Project, the Board raises revenue from licensing fees to support agency functions and operates outside the appropriations process. In fiscal year 2002, the Board operated with a budget of $1.5 million, and a staff of 25 FTEs.

The Board is subject to the Sunset Act and will be abolished on September 1, 2003, unless continued by the Legislature. The Sunset review found that while regulation of engineers who offer their services to the public is needed, the Board should make improvements to its enforcement process to strengthen this regulation and enhance public protection.

S.B. 277 continues TBPE for the standard 12-year period and strengthens the enforcement process to enhance public protection.

## RULEMAKING AUTHORITY

Rulemaking authority previously granted to the Texas Board of Professional Engineers is modified in SECTION 11 (Section 1001.203, Occupations Code), and granted in SECTION 2 (Section 1001.057, Occupations Code), SECTION 12 (Section 1001.2035, Occupations Code), SECTION 17 (Section 1001.252, Occupations Code), SECTION 21 (Section 1001.304, Occupations Code), SECTION 26 (Section 1001.405, Occupations Code), and SECTION 28 (Section 1001.4525, Occupations Code) of this bill.

## ANALYSIS

Amends Sections 1001.005 and 1001.051, Occupations Code, as follows: Sec. 1001.005. Continues the Texas Board of Professional Engineers (TBPE) for the standard 12-year period until September 1, 2015. Sec. 1001.051. Provides that an exemption under this subchapter applies only to a person who does not offer, rather than one who is not directly or indirectly represented, to the public to perform, rather than being legally qualified to engage in the practice of, engineering services.

Amends Section 1001.057, Occupations Code, as follows: Sec. 1001.057. EMPLOYEE OF PRIVATE CORPORATION OR BUSINESS ENTITY. (a) Requires the Act to not be construed to apply to the activities of a private corporation or other business entity, or the activities of the full-time employees or other personnel under the direct supervision and control of the business entity, on or in connection with certain conditions. (b) Prohibits a person who claims an exemption under this section and who is determined to have directly or indirectly represented the person as legally qualified to engage in the practice of engineering or who is determined to have violated Section 1001.301 from claiming an exemption until the 10th anniversary of the date the person made that representation. (c)

Provides that this exemption does not prohibit certain actions from occurring by either a licensed professional engineer or TBPE. The measure also adds "specifications" to clarify that a licensed engineer working with manufactured products on public or other's property would not be prohibited from requiring the manufacturer to have plans or specifications signed and sealed by a professional engineer. (d) Redefines "products manufactured by the entity" for the purposes of this section.

Amends Sections 1001.058 (b) and (c), to make a conforming change.

Amends Section 1001.101(b), Occupations Code, to update standard Sunset language requiring appointments to TBPE to be nondiscriminatory.

Amends Section 1001.102(a), Occupations Code, to update standard Sunset language prohibiting certain persons from membership on TBPE. SECTION 6. Amends Section 1001.103, Occupations Code, to update standard Sunset language relating to membership and employee restrictions.

Amends Section 1001.106, Occupations Code, by amending Subsection (a) and adding Subsection (c), to update standard Sunset language relating to grounds for removal of a TBPE member.

Amends Section 1001.108, Occupations Code, to require the governor to designate a member of TBPE as the presiding officer of TBPE to serve in that capacity at the will of the governor. Deletes a reference to "presiding officer" from text.

Amends Chapter 1001C, Occupations Code, by adding Section 1001.112, as follows: Sec. 1001.112. TRAINING. Applies standard Sunset language relating to training of TBPE members.

Amends Chapter 1001D, Occupations Code, by adding Sections 1001.1531001.156, as follows: Sec. 1001.153. DIVISION OF RESPONSIBILITIES. Applies standard Sunset language to require TBPE to develop policies that clearly separate the policy-making responsibilities of TBPE members and management responsibilities of TBPE staff. Sec. 1001.154. QUALIFICATIONS AND STANDARDS OF CONDUCT INFORMATION. Updates standard Sunset language requiring information on standards of conduct to be provided to members of TBPE and TBPE staff. Sec. 1001.155. EQUAL EMPLOYMENT OPPORTUNITY POLICY; REPORT. Applies standard Sunset language requiring the executive director to develop an equal employment opportunity program. Sec. 1001.156. INFORMATION ON STATE EMPLOYEE INCENTIVE PROGRAM. Applies standard Sunset language requiring training on participation in the state employee incentive program.

Amends Section 1001.203, Occupations Code, as follows: (a) Requires TBPE by rule to prescribe standards for compliance with Chapter 2254A, Government Code. (b) Provides that except as provided by Subsection (a), TBPE may not adopt rules restricting advertising or competitive bidding by a license holder except to prohibit false, misleading, or deceptive practices. (c) Provides that in its rules to prohibit false, misleading, or deceptive practices, TBPE may not include certain rules.

Amends Chapter 1001E, Occupations Code, by adding Section 1001.2035, as follows: Sec. 1001.2035. RULES ON CONSEQUENCES OF CRIMINAL CONVICTION. Requires TBPE to adopt rules and guidelines as necessary to comply with Chapter 53.

Amends Section 1001.204(a), Occupations Code, to require TBPE to establish certain fees in amounts reasonable and necessary to cover the costs of administering this chapter.

Amends Section 1001.210, Occupations Code, to update standard Sunset language requiring the Board to develop continuing education programs for licensees. Prohibits the Board from requiring a licensee to complete more than 15 hours of CE annually. Requires the Board to allow a license holder to certify that the license holder has complied with continuing education requirements at the time the license holder renews the license. Specifies the types of continuing education activities that the Board must accept. Limits the number of credit hours a license holder may receive for self-directed study to five credit hours annually.

Amends Chapter 1001E, Occupations Code, by adding Sections 1001.2141001.216, as follows: Sec. 1001.214. TECHNOLOGY POLICY. Applies standard Sunset language requiring TBPE to develop and implement a technology policy. Sec. 1001.215. NEGOTIATED RULEMAKING AND ALTERNATIVE DISPUTE RESOLUTION POLICY. Applies standard Sunset language requiring TBPE to develop and implement a policy to encourage the use of negotiated rulemaking and alternative dispute resolution procedures. Sec. 1001.216. JOINT ADVISORY COMMITTEE ON THE

PRACTICE OF ENGINEERING AND ARCHITECTURE. (a) Provides that the Joint Advisory Committee on the Practice of Engineering and Architecture is an advisory committee to TBPE and to the Texas Board of Architectural Examiners (TBAE). Provides that the advisory committee consists of certain individuals. (b) Provides that members of the advisory committee serve staggered six-year terms with the terms of one member appointed by TBPE and one member appointed by TBAE expiring each odd-numbered year. (c) Requires the advisory committee to meet at least twice a year. (d) Requires the advisory committee to work to resolve issues that result from the overlap between activities that constitute the practice of engineering and those that constitute the practice of architecture. Requires the advisory committee to assist each agency in protecting the public rather than advancing the interests of either agency or the profession it regulates. (e) Requires the advisory committee to issue advisory opinions to TBPE and to TBAA on matters relating to the practice of engineering and the practice of architecture, including certain factors. (f) Requires an agency, if the advisory committee issues an advisory opinion to TBPE or TBAE on a matter, to notify the committee of the final action taken with regard to the matter. Requires the advisory committee to consider the action taken by the agency on the matter in any advisory opinion subsequently issued by the committee on a related matter. (g) Requires TBPE and TBAE to enter into a memorandum of understanding regarding the advisory committee that includes the composition and purpose of the committee.

Amends Section 1001.251, Occupations Code, by adding Subsection (c), to require TBPE to maintain on TBPE's Internet website certain information.

Amends Sections 1001.252 and 1001.253, Occupations Code, as follows: Sec. 1001.252. GENERAL RULES REGARDING COMPLAINT INVESTIGATION AND DISPOSITION. Updates standard Sunset language regarding complaints and disposition. Sec. 1001. 253. COMPLAINT INFORMATION. Updates standard Sunset language requiring information to be maintained on complaints.

Amends Chapter 1001F, Occupations Code, by adding Sections 1001.254 and 1001.255, as follows: Sec. 1001.254. STATISTICAL ANALYSIS OF COMPLAINTS. (a) Requires TBPE to develop and maintain a complaint tracking system to monitor the processing of complaints filed with TBPE. (b) Requires TBPE to include with TBPE's annual financial report under Section 2101.011, Government Code, a statistical analysis of the complaints filed with TBPE during the preceding year, including certain information. Sec. 1001.255. PUBLIC PARTICIPATION. Applies standard Sunset language providing for public testimony meetings of the policymaking body.

Amends Section 1001.301, Occupations Code, by amending Subsections (b) and (c) and adding Subsection (f), as follows: (b) Makes a conforming change. (c) Makes a conforming change. (f) Provides that notwithstanding the other provisions of this chapter, a regular employee of a business entity who is engaged in engineering activities but is exempt from the licensing requirements of this chapter under Sections 1001.057 or 1001.058 is not prohibited from using the term "engineer" on a business card, cover letter, or other form of correspondence that is made available to the public if the person does not perform certain actions. Provides that this subsection does not authorize a person to use a term listed in Subsections (b)(2)-(6) or a variation or abbreviation of one of those terms.

Amends Section 1001.303, Occupations Code, to update standard Sunset language relating to an application for licensure.

Amends Section 1001.304, Occupations Code, by adding Subsection (d), as follows: (d) Requires TBPE by rule to ensure that the examination is administered to applicants with disabilities in compliance with the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12101 et seq.), and its subsequent amendments.

Amends Sections 1001.306, 1001.310, and 1001.311, Occupations Code, to update standard Sunset language requiring notice regarding examination results to persons seeking TBPE licensure. Sec. 1001.310. Updates standard Sunset language regarding temporary or provisional licensure. Sec. 1001.311. Updates standard Sunset language regarding the application of a nonresident for licensure.

Amends Section 1001.351(b), Occupations Code, to require TBPE, for the year in which the license or registration expiration date is changed, to prorate license or registration fees on a monthly basis so that each license or registration holder pays only that portion of the license or registration fee that is allocable to the number of months during which the license or registration is valid. Provides that on

renewal of the license or registration on the new expiration date, the total license or registration renewal fee is payable.

Amends Sections 1001.352 and 1001.353, Occupations Code, to update standard Sunset language regarding the notice of license expiration and the procedure for renewal.

Amends Chapter 1001H, Occupations Code, by adding Section 1001.354, as follows: Sec. 1001.354. RENEWAL OF EXPIRED LICENSE BY OUT-OF-STATE PRACTITIONER. (a) Authorizes a person who was licensed in this state, moved to another state, and is currently licensed and has been in practice in the other state for the two years preceding the date of application to obtain a new license without reexamination. (b) Requires the person to pay to TBPE a fee that is equal to two times the normally required renewal fee for the license.

Amends Section 1001.405, Occupations Code, by adding Subsection (g), to authorize TBPE by rule, notwithstanding the other provisions of this section, to provide that a business entity that has not previously registered with TBPE and that is engaged in the practice of engineering in violation of Subsection (b) is not subject to disciplinary action for the violation if the business entity registers with TBPE not later than the 30th day after the date TBPE gives written notice to the business entity of the registration requirement. Provides that this subsection does not apply to a business entity whose registration has expired.

Amends Section 1001.406, Occupations Code, as follows: Sec. 1001.406. GRADUATE ENGINEERS. (a) Provides certain rights for a graduate of a university with certain credentials and qualifications. (b) Authorizes a graduate engineer who is employed in a firm registered under this Act and who is working under the direct supervision of a licensed professional engineer to use the term "engineer" on the person's stationery or business cards or in personal communications of any character.

Amends Chapter 1001J, Occupations Code, by adding Sections 1001.4525-1001.4527, as follows: Sec. 1001.4525. PROBATION. (a) Authorizes TBPE, if a person's license suspension is probated, to require the person to perform certain tasks. (b) Requires TBPE by rule to adopt written guidelines to ensure that probation is administered consistently. Sec. 1001.4526. RESTITUTION. (a) Authorizes TBPE, subject to Subsection (b), to order a person licensed or registered under this chapter to pay restitution to a consumer as provided in an agreement resulting from an informal settlement conference instead of or in addition to imposing an administrative penalty under this chapter. (b) Provides that the amount of restitution ordered as provided in an agreement resulting from an informal settlement conference may not exceed the amount the consumer paid to the person for a service regulated by this chapter. Provides that the board may not require payment of other damages or estimate harm in a restitution order. Sec. 1001.4527. RECUSAL OF BOARD MEMBER. (a) Provides that a TBPE member who participated in the investigation of a complaint or in informal settlement negotiations regarding the complaint: (1) may not participate in the discussion of or vote on the matter at a board meeting related to the complaint; and (2) must state at the meeting why the member is prohibited from participating in the discussion of or voting on the matter. (b) Requires a statement under Subsection (a)(2) to be entered into the minutes of the meeting.

Requires TBPE, not later than January 1, 2004, to adopt the rules required by Section 1001.2035, Occupations Code, as added by this Act. Requires TBPE, not later than September 1, 2005, to adopt the written guidelines required by Section 1001.4525, Occupations Code, as added by this Act.

**EFFECTIVE DATE**

September 1, 2003. Provides that the changes in law made by Sections 1001.102 and 1001.103, Occupations Code, as amended by this Act, and Section 1001.112, Occupations Code, as added by this Act, in the prohibitions on or qualifications of members of the Texas Board of Professional Engineers do not affect the entitlement of a member serving on the Texas Board of Professional Engineers immediately before September 1, 2003, to continue to serve and function as a member of the Texas Board of Professional Engineers for the remainder of the member's term. Provides that those changes in law apply only to a member appointed on or after September 1, 2003.

# Tab 4

Bill Summary, Tex. S.B. 277,

78th Leg. R.S., (2003)

**Legislative Session**: 78(R)

| | |
|---|---|
| **SENATE BILL 277** | **SENATE AUTHOR:** R. Ellis |
| **EFFECTIVE:** 9-1-03 | **HOUSE SPONSOR:** Chisum et al. |

Senate Bill 277 amends the Occupations Code to continue the Texas Board of Professional Engineers until September 1, 2015, and to include and update standard sunset provisions. The bill authorizes full-time employees of certain corporations or graduate engineers to use the title "engineer" on business cards and in correspondence if certain conditions are met, but restricts the use of the title "professional engineer" or "licensed professional engineer" to an individual who holds a license from the board. The bill exempts a business that provides products or services to the National Aeronautics and Space Administration from the requirements of the Texas Engineering Practice Act, and it authorizes employees of that business to use "engineer" or "engineering" in job titles or personnel classifications.

The bill establishes the Joint Advisory Committee on the Practice of Engineering and Architecture as an advisory committee to the board and the Texas Board of Architectural Examiners. The bill requires the board and the Texas Board of Architectural Examiners to enter into a memorandum of understanding to address any overlap of their respective professions, issue advisory opinions to the board, and specify the composition and duties of the committee.

Senate Bill 277 authorizes the board to amend certain rules and guidelines relating to licensing requirements, fees, continuing education, and disciplinary actions. The bill authorizes the board to establish an inactive license, prohibits the holder of such a license from certain practices, and sets out conditions for reinstatement to active status.

The board must maintain on its Internet website information relating to the filing of a complaint with the board, and it must develop and maintain a complaint tracking system to monitor the processing of complaints. The bill authorizes the board to order a person who violates these provisions to pay restitution under a settlement agreement and provides for the recusal of a board member from a complaint investigation if certain conditions exist. The bill requires the board, on its own initiative or at the request of any interested person, to prepare and maintain advisory opinions about the interpretation or application of the Texas Engineering Practice Act and to make that information available on the board's Internet website. The bill establishes that reliance on the board's advisory opinions may serve as a defense to prosecution or the imposition of a civil penalty.

# Tab 5

Tex. S.B. 277, 78th Leg. R.S., (2003)

AN ACT

relating to the continuation and functions of the Texas Board of Professional Engineers and to the regulation of the practice of engineering.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subsection (e), Section 1001.004, Occupations Code, is amended to read as follows:

(e) This chapter does not:

(1) prevent a person from identifying the person in the name and trade of any engineers' labor organization with which the person is affiliated;

(2) prohibit or otherwise restrict a person from giving testimony or preparing an exhibit or document for the sole purpose of being placed in evidence before an administrative or judicial tribunal, subject to the board's disciplinary powers under Subchapter J regarding negligence, incompetency, or misconduct in the practice of engineering;

(3) repeal or amend a law affecting or regulating a licensed state land surveyor; or

(4) affect or prevent the practice of any other legally recognized profession by a member of the profession who is licensed by the state or under the state's authority.

SECTION 2. Sections 1001.005 and 1001.051, Occupations Code, are amended to read as follows:

Sec. 1001.005. APPLICATION OF SUNSET ACT. The Texas Board of Professional Engineers is subject to Chapter 325, Government Code (Texas Sunset Act). Unless continued in existence as provided by that chapter, the board is abolished and this chapter expires September 1, 2015 [2003].

Sec. 1001.051. LIMITATION ON EXEMPTION. An exemption under this subchapter applies only to a person who does not offer [is not directly or indirectly represented] to the public to perform [be legally qualified to engage in the practice of] engineering services.

SECTION 3. Section 1001.057, Occupations Code, is amended to read as follows:

Sec. 1001.057. EMPLOYEE OF PRIVATE CORPORATION OR BUSINESS ENTITY [OR AFFILIATE]. (a) This chapter shall not be construed to apply to the activities of a private corporation or other business entity, or the activities of the full-time employees or other personnel under the direct supervision and control of the business entity, on or in connection with [A regular full-time employee of a private business entity is exempt from the licensing requirements of this chapter if]:

(1) reasonable modifications to existing buildings, facilities, or other fixtures to real property not accessible to the general public and which are owned, leased, or otherwise occupied by the entity [the employee performs services exclusively for the business entity or an affiliate of that entity]; or

(2) activities related only to the research, development, design, fabrication, production, assembly,

integration, or service of products manufactured by the entity [the employee's services:

[(A) are on or in connection with property:

[(i) owned or leased by the business entity or affiliate; or

[(ii) in which the business entity or affiliate has an interest, estate, or possessory right; or

[(B) affect exclusively the property, products, or interests of the business entity or affiliate; and

[(3) the employee does not have the final authority to approve, or the ultimate responsibility for, engineering designs, plans, or specifications relating to the property or products that are to be:

[(A) incorporated into a fixed work, system, or facility on the property of another; or

[(B) made available to the public].

(b) [This exemption includes the use of a job title or personnel classification by the employee if the employee does not use:

[(1) the title or classification in connection with an offer to the public to perform engineering services; and

[(2) a name, title, or word that tends to convey the impression that a person not licensed under this chapter is offering to the public to perform engineering services.

[(c)] A person who claims an exemption under this section and who is determined to have directly or indirectly represented the person as legally qualified to engage in the practice of

engineering or who is determined to have violated Section 1001.301 may not claim an exemption until the 10th anniversary of the date the person made that representation.

(c) This exemption does not prohibit:

(1) a licensed professional engineer who intends to incorporate manufactured products into a fixed work, system, or facility that is being designed by the licensee on public property or the property of others from requiring the manufacturer to have plans or specifications signed and sealed by a licensed professional engineer; or

(2) the board from requiring, by rule, that certain manufactured products delivered to or used by the public must be designed and sealed by a licensed professional engineer, if necessary to protect the public health, safety, and welfare.

(d) For purposes of this section, "products manufactured by the entity" also includes computer software, firmware, hardware, semiconductor devices, and the production, exploration, and transportation of oil and gas and related products.

SECTION 4. Subsections (b) and (c), Section 1001.058, Occupations Code, are amended to read as follows:

(b) [This exemption includes the use of a job title or personnel classification by the employee if the employee does not use:

[(1) the title or classification in connection with an offer to the public to perform engineering services; and

[(2) a name, title, or word that tends to convey the impression that a person not licensed under this chapter is

offering to the public to perform engineering services.

[(c)] A person who claims an exemption under this section and who is determined to have directly or indirectly represented the person as legally qualified to engage in the practice of engineering or who is determined to have violated Section 1001.301 may not claim an exemption until the 10th anniversary of the date the person made that representation.

SECTION 5. Subchapter B, Chapter 1001, Occupations Code, is amended by adding Section 1001.066 to read as follows:

Sec. 1001.066. CERTAIN NASA-RELATED ACTIVITIES. This chapter does not:

(1) apply to a business entity or the business entity's employees to the extent that the entity's products or services consist of space vehicles or space services provided to, or space technology transfer programs required by, the National Aeronautics and Space Administration; or

(2) prohibit the use of the term "engineer" or "engineering" in a job title or personnel classification by an employee described by Subdivision (1) to the extent that the use of the title or classification is related to activities described by that subdivision.

SECTION 6. Subsection (b), Section 1001.101, Occupations Code, is amended to read as follows:

(b) Appointments to the board shall be made without regard to the race, color, disability [creed], sex, religion, age, or national origin of the appointee.

SECTION 7. Subsection (a), Section 1001.102, Occupations

Code, is amended to read as follows:

(a) A person may not be [is not eligible for appointment as] a public member of the board if the person or the person's spouse:

(1) is registered, certified, or licensed by a [an occupational] regulatory agency in the field of engineering;

(2) is employed by or participates in the management of a [an agency or] business entity or other organization regulated by or receiving money from the board [related to the field of engineering]; [or]

(3) owns or controls, directly or indirectly, more than a 10 percent [has a financial] interest [other than as a consumer] in a business entity or other organization regulated by or receiving money from the board; or

(4) uses or receives a substantial amount of tangible goods, services, or money from the board other than compensation or reimbursement authorized by law for board membership, attendance, or expenses [related to the field of engineering].

SECTION 8. Section 1001.103, Occupations Code, is amended to read as follows:

Sec. 1001.103. MEMBERSHIP AND EMPLOYEE RESTRICTIONS. (a) In this section, "Texas trade association" means a cooperative and voluntarily joined statewide association of business or professional competitors in this state designed to assist its members and its industry or profession in dealing with mutual business or professional problems and in promoting their common interest.

(a-1) A person may not be a [A] member [or employee] of the

board and may not be a board employee employed in a "bona fide executive, administrative, or professional capacity," as that phrase is used for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.), and its subsequent amendments, if:

(1) the person is an officer, employee, or paid consultant of a Texas trade association in the field of engineering [industry]; or

(2) the person's spouse [related within the second degree by affinity or consanguinity, as determined under Chapter 573, Government Code, to a person who] is an officer, manager [employee], or paid consultant of a Texas trade association in the field of engineering [industry].

(b) A person may not be [serve as] a member of the board or act as the general counsel to the board if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to the operation of the board.

SECTION 9. Section 1001.106, Occupations Code, is amended by amending Subsection (a) and adding Subsection (c) to read as follows:

(a) It is a ground for removal from the board that a member:

(1) does not have at the time of taking office [appointment] the qualifications required by Sections 1001.101 and [Section] 1001.102;

(2) does not maintain during service on the board the qualifications required by Sections 1001.101 and [Section]

1001.102;

(3) is ineligible for membership under Section 1001.102 or [violates a prohibition established by Section] 1001.103; [or]

(4) cannot, because of illness or disability, discharge the member's duties for a substantial part of the member's term; or

(5) is absent from more than half of the regularly scheduled board meetings that the member is eligible to attend during [held in] a calendar year without an excuse approved by a majority vote of the board[, excluding meetings held while the person was not a member].

(c) If the executive director has knowledge that a potential ground for removal exists, the executive director shall notify the presiding officer of the board of the potential ground. The presiding officer shall then notify the governor and the attorney general that a potential ground for removal exists. If the potential ground for removal involves the presiding officer, the executive director shall notify the next highest ranking officer of the board, who shall then notify the governor and the attorney general that a potential ground for removal exists.

SECTION 10. Section 1001.108, Occupations Code, is amended to read as follows:

Sec. 1001.108. OFFICERS. The governor shall designate a member of the board as the presiding officer of the board to serve in that capacity at the will of the governor. The board shall elect annually from its members [a presiding officer,] an assistant

presiding officer[,] and a secretary.

SECTION 11. Subchapter C, Chapter 1001, Occupations Code, is amended by adding Section 1001.112 to read as follows:

Sec. 1001.112. TRAINING. (a) A person who is appointed to and qualifies for office as a member of the board may not vote, deliberate, or be counted as a member in attendance at a meeting of the board until the person completes a training program that complies with this section.

(b) The training program must provide the person with information regarding:

(1) this chapter;

(2) the programs operated by the board;

(3) the role and functions of the board;

(4) the rules of the board, with an emphasis on the rules that relate to disciplinary and investigatory authority;

(5) the current budget for the board;

(6) the results of the most recent formal audit of the board;

(7) the requirements of:

(A) the open meetings law, Chapter 551, Government Code;

(B) the public information law, Chapter 552, Government Code;

(C) the administrative procedure law, Chapter 2001, Government Code; and

(D) other laws relating to public officials, including conflict-of-interest laws; and

9

(8) any applicable ethics policies adopted by the board or the Texas Ethics Commission.

(c) A person appointed to the board is entitled to reimbursement, as provided by the General Appropriations Act, for the travel expenses incurred in attending the training program regardless of whether the attendance at the program occurs before or after the person qualifies for office.

SECTION 12. Subchapter D, Chapter 1001, Occupations Code, is amended by adding Sections 1001.153 through 1001.156 to read as follows:

Sec. 1001.153. DIVISION OF RESPONSIBILITIES. The board shall develop and implement policies that clearly separate the policy-making responsibilities of the board and the management responsibilities of the executive director and the staff of the board.

Sec. 1001.154. QUALIFICATIONS AND STANDARDS OF CONDUCT INFORMATION. The executive director or the executive director's designee shall provide to members of the board and to board employees, as often as necessary, information regarding the requirements for office or employment under this chapter, including information regarding a person's responsibilities under applicable laws relating to standards of conduct for state officers or employees.

Sec. 1001.155. EQUAL EMPLOYMENT OPPORTUNITY POLICY; REPORT. (a) The executive director or the executive director's designee shall prepare and maintain a written policy statement that implements a program of equal employment opportunity to ensure that

all personnel decisions are made without regard to race, color, disability, sex, religion, age, or national origin.

(b)  The policy statement must include:

(1)  personnel policies, including policies relating to recruitment, evaluation, selection, training, and promotion of personnel, that show the intent of the board to avoid the unlawful employment practices described by Chapter 21, Labor Code; and

(2)  an analysis of the extent to which the composition of the board's personnel is in accordance with state and federal law and a description of reasonable methods to achieve compliance with state and federal law.

(c)  The policy statement must:

(1)  be updated annually;

(2)  be reviewed by the Commission on Human Rights for compliance with Subsection (b)(1); and

(3)  be filed with the governor's office.

Sec. 1001.156.  INFORMATION ON STATE EMPLOYEE INCENTIVE PROGRAM.  The executive director or the executive director's designee shall provide to board employees information and training on the benefits and methods of participation in the state employee incentive program under Subchapter B, Chapter 2108, Government Code.

SECTION 13.  Section 1001.203, Occupations Code, is amended to read as follows:

Sec. 1001.203.  RULES RESTRICTING ADVERTISING OR COMPETITIVE BIDDING.  (a)  The board by rule shall prescribe standards for compliance with Subchapter A, Chapter 2254,

Government Code [may restrict competitive bidding].

(b)  Except as provided by Subsection (a), the [The] board may not adopt rules [a rule] restricting advertising or competitive bidding by a license holder [person licensed under this chapter] except to prohibit false, misleading, or deceptive practices [by the person].

(c)  In its rules to prohibit false, misleading, or deceptive practices, the [The] board may not include [in its rules to prohibit false, misleading, or deceptive practices] a rule that:

(1)  restricts the [person's] use of any medium for advertising;

(2)  restricts the use of a license holder's [person's] personal appearance or [use of the person's] voice in an advertisement;

(3)  relates to the size or duration of an advertisement by the license holder [person]; or

(4)  restricts the license holder's [person's] advertisement under a trade name.

SECTION 14.  Subchapter E, Chapter 1001, Occupations Code, is amended by adding Section 1001.2035 to read as follows:

Sec. 1001.2035.  RULES ON CONSEQUENCES OF CRIMINAL CONVICTION.  The board shall adopt rules and guidelines as necessary to comply with Chapter 53.

SECTION 15.  Subsection (a), Section 1001.204, Occupations Code, is amended to read as follows:

(a)  The board shall establish the following [reasonable and necessary] fees in amounts reasonable and necessary to cover the

costs of administering [for the administration of] this chapter [in amounts not to exceed]:

     (1) license fee; [. . . . . . . . . . . . . . . . . . $50]

     (2) annual renewal fee; [. . . . . . . . . . . . . . . $75]

     (3) reciprocal license fee; [. . . . . . . . . . . . $50]

     (4) duplicate license fee; [. . . . . . . . . . . . $5]

     (5) engineer-in-training certificate fee; [. . . . $15]

     (6) roster of engineers fee; [. . . . . . . . . . . $10]

     (7) examination fee; [. . . . . . . . . . . . . . . . $200]

     (8) registration fee for engineering firm; and

     (9) inactive status fee. [. . . . . . . . . . . . . $100]

SECTION 16. Subsection (c), Section 1001.206, Occupations Code, is amended to read as follows:

(c) The fee increase imposed by Subsection (a) does not apply to an engineer who:

     (1) meets the qualifications for an exemption under Section 1001.057 or 1001.058 but does not claim that exemption; [or]

     (2) is disabled as described by Section 1001.205; or

     (3) is on inactive status as provided by Section 1001.355.

SECTION 17. Section 1001.210, Occupations Code, is amended to read as follows:

Sec. 1001.210. CONTINUING EDUCATION PROGRAMS. (a) The board shall [may] recognize, prepare, or administer continuing education programs for its license holders. A license holder must participate in the programs to the extent required by the board to

keep the person's license.

(b)  The board may not require a license holder to obtain more than 15 hours of continuing education annually.  The board shall permit a license holder to certify at the time the license is renewed that the license holder has complied with the board's continuing education requirements.

(c)  The board shall permit a license holder to receive continuing education credit for educational, technical, ethical, or professional management activities related to the practice of engineering, including:

(1)  successfully completing or auditing a course sponsored by an institution of higher education;

(2)  successfully completing a course certified by a professional or trade organization;

(3)  attending a seminar, tutorial, short course, correspondence course, videotaped course, or televised course;

(4)  participating in an in-house course sponsored by a corporation or other business entity;

(5)  teaching a course described by Subdivisions (1)-(4);

(6)  publishing an article, paper, or book on the practice of engineering;

(7)  making or attending a presentation at a meeting of a technical or engineering management society or organization or writing a paper presented at such a meeting;

(8)  participating in the activities of a professional society or association, including serving on a committee of the

organization; and

(9) engaging in self-directed study.

(d) A license holder may not receive more than five continuing education credit hours annually for engaging in self-directed study [persons regulated by the board under this chapter. Participation in the programs is voluntary].

SECTION 18. Subchapter E, Chapter 1001, Occupations Code, is amended by adding Sections 1001.214, 1001.215, and 1001.216 to read as follows:

Sec. 1001.214. TECHNOLOGY POLICY. The board shall develop and implement a policy requiring the executive director and board employees to research and propose appropriate technological solutions to improve the board's ability to perform its functions. The technological solutions must:

(1) ensure that the public is able to find information about the board on the Internet;

(2) ensure that persons who want to use the board's services are able to:

(A) interact with the board through the Internet; and

(B) access any service that can be provided effectively through the Internet; and

(3) be cost-effective and developed through the board's planning processes.

Sec. 1001.215. NEGOTIATED RULEMAKING AND ALTERNATIVE DISPUTE RESOLUTION POLICY. (a) The board shall develop and implement a policy to encourage the use of:

(1) negotiated rulemaking procedures under Chapter 2008, Government Code, for the adoption of board rules; and

(2) appropriate alternative dispute resolution procedures under Chapter 2009, Government Code, to assist in the resolution of internal and external disputes under the board's jurisdiction.

(b) The board's procedures relating to alternative dispute resolution must conform, to the extent possible, to any model guidelines issued by the State Office of Administrative Hearings for the use of alternative dispute resolution by state agencies.

(c) The board shall designate a trained person to:

(1) coordinate the implementation of the policy adopted under Subsection (a);

(2) serve as a resource for any training needed to implement the procedures for negotiated rulemaking or alternative dispute resolution; and

(3) collect data concerning the effectiveness of those procedures, as implemented by the board.

Sec. 1001.216. JOINT ADVISORY COMMITTEE ON THE PRACTICE OF ENGINEERING AND ARCHITECTURE. (a) The Joint Advisory Committee on the Practice of Engineering and Architecture is an advisory committee to the board and to the Texas Board of Architectural Examiners. The advisory committee consists of:

(1) three members of the board and one practicing architectural engineer appointed by the board; and

(2) three members of the Texas Board of Architectural Examiners and one practicing architect appointed by that board.

(b) Members of the advisory committee serve staggered six-year terms with the terms of one or two members appointed by the board and one or two members appointed by the Texas Board of Architectural Examiners expiring each odd-numbered year.

(c) The advisory committee shall meet at least twice a year.

(d) The advisory committee shall work to resolve issues that result from the overlap between activities that constitute the practice of engineering and those that constitute the practice of architecture. The advisory committee shall assist each agency in protecting the public rather than advancing the interests of either agency or the profession it regulates.

(e) The advisory committee shall issue advisory opinions to the board and to the Texas Board of Architectural Examiners on matters relating to the practice of engineering and the practice of architecture, including:

(1) opinions on whether certain activities constitute the practice of engineering or the practice of architecture;

(2) specific disciplinary proceedings initiated by either agency; and

(3) the need for persons working on particular projects to be licensed by the board or registered by the Texas Board of Architectural Examiners.

(f) If the advisory committee issues an advisory opinion to the board or the Texas Board of Architectural Examiners on a matter, that agency shall notify the committee of the final action taken with regard to the matter. The advisory committee shall consider the action taken by the agency on the matter in any advisory opinion

subsequently issued by the committee on a related matter.

(g) The board and the Texas Board of Architectural Examiners shall enter into a memorandum of understanding regarding the advisory committee that includes the composition and purpose of the committee.

SECTION 19. Section 1001.251, Occupations Code, is amended by adding Subsection (c) to read as follows:

(c) The board shall maintain on the board's Internet website:

(1) information regarding the procedure for filing a complaint with the board; and

(2) a form that a person may use to file a complaint with the board.

SECTION 20. Sections 1001.252 and 1001.253, Occupations Code, are amended to read as follows:

Sec. 1001.252. GENERAL RULES REGARDING COMPLAINT INVESTIGATION AND DISPOSITION [COMPLAINTS]. (a) The board shall adopt rules that permit the board to receive and investigate a confidential complaint against a license holder or other person who may have violated this chapter. The board shall maintain the confidentiality of the complaint during the investigation.

(b) The board by rule shall specify:

(1) the manner by which a person may contact the board for assistance in filing a complaint;

(2) the place at which a complaint must be filed;

(3) the proper form of a complaint; and

(4) the information that must be included in a

complaint.

(c)  The board's procedures must permit a member of the public who desires to file a complaint to:

(1)  speak to an investigator on the staff of the board if the person desires to do so; or

(2)  easily and conveniently access the board's complaint process without being required to speak to an investigator on the staff of the board if the person does not desire to speak to an investigator.

(d)  The board shall consider any written grievance against a license holder or other person filed with the board as a complaint.

(e)  A complaint must include information sufficient for the board to determine whether it has the authority to resolve the complaint.  A complaint that contains sufficient information for the board to commence an investigation is not required to include all of the information necessary for the board to determine the validity of the complaint.

(f)  On receipt of a complaint, the board shall determine whether the board has the authority to resolve the complaint.  If the board does not have the authority to resolve the complaint, the board shall dismiss the complaint.  If the board has the authority to resolve the complaint, the board shall initiate a disciplinary proceeding against the person who is the subject of the complaint.

(g)  The board by rule shall prescribe a method for prioritizing complaints for purposes of complaint investigation. In establishing priorities:

(1)  a complaint that alleges an action that could

potentially harm the public takes precedence over a complaint that does not allege an action that could potentially harm the public; and

(2) with regard to complaints that do not allege an action that could potentially harm the public, a complaint filed by a member of the public takes precedence over a complaint filed by the staff of the board.

(h) The board's staff is responsible for conducting all phases of complaint investigation, including gathering evidence necessary to determine the validity of the complaint.

(i) The board may employ or contract with advisors, consultants, engineers, or other persons to provide technical assistance in investigations and disciplinary proceedings. Except for an action involving fraud, conspiracy, or malice, a person whose services are obtained by the board under this subsection is immune from civil liability and may not be subjected to a suit for damages for any investigation, report, recommendation, statement, evaluation, finding made, or other action taken in the course of performing the person's official duties.

(j) The board's staff shall regularly report to the board on each complaint dismissed by board staff, including:

(1) the name of the complainant;

(2) the name of the person who is the subject of the complaint;

(3) the basis of the complaint; and

(4) the reason for the dismissal of the complaint.

(k) Except as provided by Subsection (l), a complaint filed

with the board is public information.

(1) For any frivolous complaint, the license holder's name and other personal information on the complaint is not public information and must be redacted.

(m) In this section, "frivolous complaint" means a complaint that the executive director and investigator, with board approval, determined:

(1) was made for the purpose of harassment; and

(2) does not demonstrate harm to any person.

Sec. 1001.253. COMPLAINT INFORMATION. (a) The board shall:

(1) assign a number to each complaint filed with the board; and

(2) ensure that each phase of the processing of a complaint is appropriately documented.

(b) The board shall maintain a [keep an information] file on [about] each written complaint [relating to a license holder] filed with the board. The file must include:

(1) the name of the person who filed the complaint;

(2) the date the complaint is received by the board;

(3) the subject matter of the complaint;

(4) the name of each person contacted in relation to the complaint;

(5) a summary of the results of the review or investigation of the complaint; and

(6) an explanation of the reason the file was closed, if the board closed the file without taking action other than to

investigate the complaint.

(c) The board shall provide to the person filing the complaint and to each person who is a subject of the complaint a copy of the board's policies and procedures relating to complaint investigation and resolution.

(d) The [(b) If a written complaint relating to a license holder is filed with the board, the] board, at least quarterly and until final disposition of the complaint, shall notify the parties to the complaint of the status of the complaint unless the notice would jeopardize an undercover investigation.

SECTION 21. Subchapter F, Chapter 1001, Occupations Code, is amended by adding Sections 1001.254 and 1001.255 to read as follows:

Sec. 1001.254. STATISTICAL ANALYSIS OF COMPLAINTS. (a) The board shall develop and maintain a complaint tracking system to monitor the processing of complaints filed with the board.

(b) The board shall include with the board's annual financial report under Section 2101.011, Government Code, a statistical analysis of the complaints filed with the board during the preceding year, including:

(1) the number of complaints filed;

(2) a categorization of complaints filed according to the basis of the complaint and the number of complaints in each category;

(3) the number of complaints filed by board staff;

(4) the number of complaints filed by persons other

than board staff;

   (5) the average length of time required to resolve a complaint;

   (6) the number of complaints resolved and the manner in which they were resolved, including:

    (A) the number of complaints dismissed and the reasons for dismissal; and

    (B) the number of complaints resulting in disciplinary action, the disciplinary action taken, and whether the disciplinary action taken was imposed by stipulation, agreed settlement, consent order, default, or order following a contested case hearing; and

   (7) the number of complaints filed that are unresolved, the number of those complaints filed by board staff, the number of those complaints filed by persons other than board staff, and the average length of time that the unresolved complaints have been on file.

  Sec. 1001.255. PUBLIC PARTICIPATION. The board shall develop and implement policies that provide the public with a reasonable opportunity to appear before the board and to speak on any issue under the jurisdiction of the board.

  SECTION 22. Section 1001.301, Occupations Code, is amended by amending Subsections (b) and (c) and adding Subsections (f) and (g) to read as follows:

  (b) Except as provided by Subsection (f), a [A] person may not, unless the person holds a license issued under this chapter, directly or indirectly use or cause to be used as a professional,

23

business, or commercial identification, title, name, representation, claim, asset, or means of advantage or benefit any of, or a variation or abbreviation of, the following terms:

    (1) "engineer";

    (2) "professional engineer";

    (3) "licensed engineer";

    (4) "registered engineer";

    (5) "registered professional engineer";

    (6) "licensed professional engineer"; or

    (7) "engineered."

(c) Except as provided by Subsection (f), a [A] person may not directly or indirectly use or cause to be used an abbreviation, word, symbol, slogan, or sign that tends or is likely to create an impression with the public that the person is qualified or authorized to engage in the practice of engineering unless the person holds a license and is practicing under this chapter.

(f) Notwithstanding the other provisions of this chapter, a regular employee of a business entity who is engaged in engineering activities but is exempt from the licensing requirements of this chapter under Sections 1001.057 or 1001.058 is not prohibited from using the term "engineer" on a business card, cover letter, or other form of correspondence that is made available to the public if the person does not:

    (1) offer to the public to perform engineering services; or

    (2) use the title in any context outside the scope of the exemption in a manner that represents an ability or willingness

to perform engineering services or make an engineering judgment requiring a licensed professional engineer.

(g) Subsection (f) does not authorize a person to use a term listed in Subsections (b)(2)-(6) or a variation or abbreviation of one of those terms.

SECTION 23. Section 1001.303, Occupations Code, is amended to read as follows:

Sec. 1001.303. APPLICATION FOR LICENSE. (a) An applicant for a license under this chapter must submit an [a sworn] application on a form prescribed and provided by the board.

(b) The application must contain:

(1) personal information about the applicant, as required by board rule;

(2) a description of the applicant's education;

(3) a detailed summary of the applicant's actual engineering work;

(4) a description of any engineering license or registration previously issued to the applicant and any denial, revocation, or suspension of an engineering license or registration held by the applicant;

(5) a description of any criminal offense of which the applicant has been convicted; and

(6) at least three [five] references from engineers [individuals] having personal knowledge of the applicant's character, reputation, [and] general suitability for a license, and [of whom at least three must be engineers having personal knowledge of the applicant's] engineering experience.

SECTION 24. Section 1001.304, Occupations Code, is amended by adding Subsection (d) to read as follows:

(d) The board by rule shall ensure that the examination is administered to applicants with disabilities in compliance with the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12101 et seq.), and its subsequent amendments.

SECTION 25. Sections 1001.306, 1001.310, and 1001.311, Occupations Code, are amended to read as follows:

Sec. 1001.306. EXAMINATION RESULTS. (a) Not later than the 30th day after the date a person takes a licensing examination under this chapter, the [The] board shall notify the person [each examinee] of the results of the [an] examination [not later than the 30th day after the date the examination is administered].

(a-1) If the [an] examination is graded or reviewed by a [national] testing service:

(1) [,] the board shall notify the person [each examinee] of the results of the examination not later than the 14th day after the date the board receives the results from the testing service; and

(2) if[.

[(b) If the] notice of the examination results [of an examination] will be delayed for longer than 90 days after the examination date, the board shall notify the person [each examinee] of the reason for the delay before the 90th day.

(b) The board may require a testing service to notify a person of the results of the person's examination.

(c) If requested in writing by a person who fails a

licensing [the] examination administered under this chapter, the board shall furnish [provide to] the person with an analysis of the person's performance on the examination.

Sec. 1001.310. TEMPORARY OR PROVISIONAL LICENSE. (a) The board by rule may adopt standards and procedures for issuing a temporary or provisional license under this chapter.

(b) The board may issue a provisional license to an applicant currently licensed in another jurisdiction who seeks a license in this state and who:

(1) has been licensed in good standing as an engineer for at least two years in another jurisdiction, including a foreign country, that has licensing requirements substantially equivalent to the requirements of this chapter;

(2) has passed a national or other examination recognized by the board relating to the practice of engineering; and

(3) is sponsored by a person licensed by the board under this chapter with whom the provisional license holder will practice during the time the person holds a provisional license.

(c) The board may waive the requirement of Subsection (b)(3) for an applicant if the board determines that compliance with that subsection would be a hardship to the applicant.

(d) A provisional license is valid until the date the board approves or denies the provisional license holder's application for a license. The board shall issue a license under this chapter to the provisional license holder if:

(1) the provisional license holder is eligible to be

licensed under Section 1001.311(b); or

(2) the provisional license holder meets the following requirements:

(A) the provisional license holder passes an examination that tests the provisional license holder's knowledge and understanding of the laws and rules relating to the practice of engineering in this state;

(B) the board verifies that the provisional license holder meets the academic and experience requirements for a license under this chapter; and

(C) the provisional license holder satisfies any other licensing requirements under this chapter.

(e) The board must approve or deny a provisional license holder's application for a license not later than the 180th day after the date the provisional license is issued. The board may extend the 180-day period if the results of an examination have not been received by the board before the end of that period.

(f) The board may establish a fee for provisional licenses in an amount reasonable and necessary to cover the cost of issuing the license.

Sec. 1001.311. APPLICATION BY NONRESIDENT. (a) A person who holds a license or certificate of registration issued by another state or a foreign country may apply for a license in this state.

(b) The board may waive any prerequisite to obtaining a license for an applicant after reviewing the applicant's credentials and determining that the applicant holds a license

issued by another jurisdiction that has licensing requirements substantially equivalent to those of this state.

SECTION 26.  Subsection (b), Section 1001.351, Occupations Code, is amended to read as follows:

(b)  The board by rule may adopt a system under which licenses and registrations expire on various dates during the year. For the year in which the license or registration expiration date is changed, the board shall prorate license or registration fees on a monthly basis so that each license or registration holder pays only that portion of the license or registration fee that is allocable to the number of months during which the license or registration is valid.  On renewal of the license or registration on the new expiration date, the total license or registration renewal fee is payable [and shall adjust renewal dates accordingly].

SECTION 27.  Sections 1001.352 and 1001.353, Occupations Code, are amended to read as follows:

Sec. 1001.352.  NOTICE OF LICENSE EXPIRATION.  Not later than the 30th day [one month] before the [expiration] date [of] a person's license is scheduled to expire, the board shall send [mail to the person at the last address the person provided to the board] written notice of the impending [license] expiration to the person at the person's last known address according to the records of the board [date and the amount of the annual renewal fee for the license].

Sec. 1001.353.  PROCEDURE FOR RENEWAL.  (a)  A person who is otherwise eligible to renew a license may renew an unexpired license by paying the required renewal fee to the board before the

expiration date of the license. A person whose license has expired may not engage in activities that require a license until the license has been renewed.

(b) A person whose license has been expired for 90 days or less may renew the license by paying to the board a renewal fee that is equal to 1-1/2 times the normally [the] required renewal fee and any applicable increase in fees as required by Section 1001.206 [a penalty fee set by the board].

(c) A person whose license has been expired for more than 90 days but less than two years may renew the license by paying to the board a renewal fee that is equal to two times the normally required renewal fee and any applicable increase in fees as required by Section 1001.206 for each delinquent year or part of a year [all unpaid renewal fees and a penalty fee set by the board].

(d) A person whose license has been expired for two years or more may not renew the license. The person may obtain a new license by complying with the requirements and procedures, including the examination requirements, for obtaining an original license [that are in effect at the time the person applies].

SECTION 28. Subchapter H, Chapter 1001, Occupations Code, is amended by adding Sections 1001.354 and 1001.355 to read as follows:

Sec. 1001.354. RENEWAL OF EXPIRED LICENSE BY OUT-OF-STATE PRACTITIONER. (a) A person who was licensed in this state, moved to another state, and is currently licensed and has been in practice in the other state for the two years preceding the date of application may obtain a new license without reexamination.

(b) The person must pay to the board a fee that is equal to two times the normally required renewal fee for the license.

Sec. 1001.355. INACTIVE STATUS. (a) An engineer may request inactive status at any time before the expiration date of the person's license. A license holder on inactive status may not practice engineering.

(b) A license holder on inactive status must pay an annual fee set by the board.

(c) A license holder on inactive status is not required to:

(1) comply with the continuing education requirements adopted by the board; or

(2) take an examination for reinstatement to active status.

(d) To return to active status, a license holder on inactive status must:

(1) file with the board a written notice requesting reinstatement to active status;

(2) pay the fee for the annual renewal of the license and the fee increase required by Section 1001.206; and

(3) provide evidence satisfactory to the board that the person has complied with the continuing education requirements adopted by the board.

SECTION 29. Section 1001.405, Occupations Code, is amended by adding Subsection (g) to read as follows:

(g) Notwithstanding the other provisions of this section, the board by rule may provide that a business entity that has not previously registered with the board and that is engaged in the

practice of engineering in violation of Subsection (b) is not subject to disciplinary action for the violation if the business entity registers with the board not later than the 30th day after the date the board gives written notice to the business entity of the registration requirement. This subsection does not apply to a business entity whose registration has expired.

SECTION 30. Section 1001.406, Occupations Code, is amended to read as follows:

Sec. 1001.406. GRADUATE ENGINEERS. (a) A graduate of a [public] university recognized by the American Association of Colleges and Universities who has a degree from an engineering program accredited by the Accreditation Board for Engineering and Technology (ABET) has the right to:

(1) disclose any college degree received by the person; and

(2) use the term "graduate engineer" on the person's stationery or business cards or in personal communications of any character.

(b) A graduate engineer who is employed in a firm registered under this chapter and who is working under the direct supervision of a licensed professional engineer may use the term "engineer" on the person's stationery or business cards or in personal communications of any character.

SECTION 31. Subchapter J, Chapter 1001, Occupations Code, is amended by adding Sections 1001.4525, 1001.4526, and 1001.4527 to read as follows:

Sec. 1001.4525. PROBATION. (a) If a person's license

suspension is probated, the board may require the person to:

(1) report regularly to the board on matters that are the basis of the probation;

(2) limit practice to the areas prescribed by the board; or

(3) continue or review professional education until the person attains a degree of skill satisfactory to the board in those areas that are the basis of the probation.

(b) The board by rule shall adopt written guidelines to ensure that probation is administered consistently.

Sec. 1001.4526. RESTITUTION. (a) Subject to Subsection (b), the board may order a person licensed or registered under this chapter to pay restitution to a consumer as provided in an agreement resulting from an informal settlement conference instead of or in addition to imposing an administrative penalty under this chapter.

(b) The amount of restitution ordered as provided in an agreement resulting from an informal settlement conference may not exceed the amount the consumer paid to the person for a service regulated by this chapter. The board may not require payment of other damages or estimate harm in a restitution order.

Sec. 1001.4527. RECUSAL OF BOARD MEMBER. (a) A board member who participated in the investigation of a complaint or in informal settlement negotiations regarding the complaint:

(1) may not participate in the discussion of or vote on the matter at a board meeting related to the complaint; and

(2) shall state at the meeting why the member is prohibited from participating in the discussion of or voting on the

matter.

(b)  A statement under Subsection (a)(2) shall be entered into the minutes of the meeting.

SECTION 32.  Chapter 1001, Occupations Code, is amended by adding Subchapter M to read as follows:

SUBCHAPTER M.  ADVISORY OPINIONS

Sec. 1001.601.  BOARD ADVISORY OPINIONS.  (a)  On its own initiative or at the request of any interested person, the board shall prepare a written advisory opinion about an interpretation of this chapter or the application of this chapter to a person in regard to a specified existing or hypothetical factual situation. The board shall respond to requests for opinions within 180 days or affirmatively state its reason for not responding to the request.

Sec. 1001.602.  MAINTENANCE OF OPINIONS; SUMMARY.  The board shall:

(1)  number and classify each advisory opinion issued under this subchapter; and

(2)  annually compile a summary of the opinions in a single reference document that is available on the Internet.

Sec. 1001.603.  ATTORNEY GENERAL'S OPINIONS.  The authority of the board to issue an advisory opinion under this subchapter does not affect the authority of the attorney general to issue an opinion as authorized by law.

Sec. 1001.604.  RELIANCE ON ADVISORY OPINION.  It is a defense to prosecution or to imposition of a civil penalty that a person reasonably relied on a written advisory opinion of the board relating to:

       (1)  the provision of the law the person is alleged to have violated; or

       (2)  a fact situation that is substantially similar to the fact situation in which the person is involved.

       SECTION 33.  (a)  Not later than January 1, 2004, the Texas Board of Professional Engineers shall adopt the rules required by Section 1001.2035, Occupations Code, as added by this Act.

       (b)  Not later than September 1, 2005, the Texas Board of Professional Engineers shall adopt the written guidelines required by Section 1001.4525, Occupations Code, as added by this Act.

       (c)  The Texas Board of Professional Engineers is not required to issue an advisory opinion under Subchapter M, Chapter 1001, Occupations Code, as added by this Act, before January 1, 2004.

       SECTION 34.  (a)  This Act takes effect September 1, 2003.

       (b)  The changes in law made by Sections 1001.102 and 1001.103, Occupations Code, as amended by this Act, and Section 1001.112, Occupations Code, as added by this Act, in the prohibitions on or qualifications of members of the Texas Board of Professional Engineers do not affect the entitlement of a member serving on the Texas Board of Professional Engineers immediately before September 1, 2003, to continue to serve and function as a member of the Texas Board of Professional Engineers for the remainder of the member's term.  Those changes in law apply only to a member appointed on or after September 1, 2003.

       (c)  The change in law made by Section 1001.108, Occupations Code, as amended by this Act, does not affect the entitlement of a

person who was serving as presiding officer of the Texas Board of Professional Engineers immediately before September 1, 2003, to continue to serve and function in that capacity for the remainder of the person's term as presiding officer. That change in law applies only to the designation of a presiding officer of the board after that person's term as presiding officer expires.

(d) The changes in law made by this Act to Chapter 1001, Occupations Code, relating to the investigation of a complaint apply only to a complaint filed with the Texas Board of Professional Engineers on or after the effective date of this Act. A complaint filed with the board before the effective date of this Act is governed by the law as it existed immediately before that date, and the former law is continued in effect for that purpose.

S.B. No. 277

_____          _____
President of the Senate                  Speaker of the House

    I hereby certify that S.B. No. 277 passed the Senate on April 22, 2003, by a viva-voce vote; May 21, 2003, Senate refused to concur in House amendments and requested appointment of Conference Committee; May 24, 2003, House granted request of the Senate; May 31, 2003, Senate adopted Conference Committee Report by a viva-voce vote.

 

_____
Secretary of the Senate

    I hereby certify that S.B. No. 277 passed the House, with amendments, on May 8, 2003, by a non-record vote; May 24, 2003, House granted request of the Senate for appointment of Conference Committee; May 31, 2003, House adopted Conference Committee Report by a non-record vote.

 

_____
Chief Clerk of the House

Approved:

_____
Date

_____
Governor

# Tab 6

Final Order, dated Aug. 16, 2012

| | | |
|---|---|---|
| **TEXAS BOARD OF PROFESSIONAL** | ' | **BEFORE THE STATE OFFICE** |
| **ENGINEERS** | ı | |
| | ı | |
| **v.** | ' | **OF** |
| | ı | |
| **RAGHNUATH DASS, P.E.** | ' | |
| **LICENSE NO. 90119** | ' | **ADMINISTRATIVE HEARINGS** |

## TEXAS BOARD OF PROFESSIONAL ENGINEERS' FINAL ORDER

Be it known that on this date the matter of the Texas Board of Professional Engineers (Board) vs. Raghnuath Dass, P.E., License No. 90119 (Respondent) was heard by the Board in an open meeting on August 16, 2012. The Board finds that after proper and timely notice was given to Respondent, the above styled case was heard by an Administrative Law Judge assigned to the State Office of Administrative Hearings in Austin, Texas on April 18, 2012. Respondent appeared and represented himself. The Board was represented by Staff Attorney Dewey E. Helmcamp III.

Following the presentation of evidence, the Administrative Law Judge (ALJ) closed the record. On June 13, 2012, the ALJ prepared a Proposal for Decision (PFD) which found that Respondent violated 22 TAC sections 137.33(b), 133.37(f) and 137.63(b) (2) and recommended a sanction of a Formal Reprimand, a suspension of Respondent's Texas engineer's license for two years with the entire period probated, and a $4,000.00 administrative penalty.

The Board reviewed the PFD, including Findings of Fact and Conclusions of Law, the Respondent's Exceptions to the PFD, the Board's Response to the Exceptions, and the transcript of the hearing and gave due consideration thereto. By majority vote of the members of the Board present and voting at the meeting, the Board adopts the ALJ's PFD including the ALJ's Findings of Fact and Conclusions

TBPE000012

of law set forth as follows:

# I. FINDINGS OF FACT

1. Raghunath Dass (Respondent) is a licensed professional engineer holding professional license number 90119 issued by the Texas Board of Professional Engineers (Board). At the times applicable to this matter, he was the sole licensed professional engineer employed by Trinity Soils Investigation Laboratories, Inc. (TSI). ·

2. On December 8, 2011, staff of the Board (Staff) sent a notice of hearing and a Complaint to Respondent proposing a two-year probated suspension of Respondent's license, a formal reprimand, and an administrative penalty of $7,000.

3. The notice of hearing contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short plain statement of the matters asserted.

4. The hearing on the merits was held on April 18, 2012, before Administrative Law Judge (ALJ) Richard R. Wilfong in the William P. Clements Building, 300 West 15th Street, Fourth Floor, Austin, Texas. All parties appeared and participated in the hearing. The Board was represented by Dewey E. Helmcamp III, attorney. Respondent represented himself. The record closed the same day.

5. On February 18, 2009, TSI submitted a proposal to perform construction material testing (CMT) for the San Patricio County fairgrounds horse barn project (the Project). The proposal included a price quote.

6. The Project is a public works project.

7. From February 17, 2009, through April 7, 2009, TSI submitted 16 CMT reports to San Patricio County for the Project.

8. None of the 16 CMT reports released to San Patricio County were signed and sealed by a licensed professional engineer.

9. Respondent did not perform or directly supervise any of the testing reflected in the 16 CMT reports submitted by TSI to San Patricio County for the Project.

10. Respondent had no knowledge of the project, or the actions of TSI with respect to the Project, before April 17, 2009.

11. On April 20, 2009, Respondent added his undated signature and seal to copies of the 16 CMT reports and resubmitted them to San Patricio County.

TBPE000013

12. Respondent provided copies of the 16 CMT reports bearing his undated signature and seal when he attended an informal conference with the Board on June 28, 2010.

13. Respondent failed to exercise reasonable care and diligence to prevent TSI from submitting a proposal for construction material testing for the Project which included a price bid.

14. Respondent failed to exercise reasonable care and diligence to prevent TSI from performing construction material testing for the Project without having the tests performed or directly supervised by a licensed professional engineer.

15. Respondent failed to exercise reasonable care and diligence to prevent TSI from submitting CMT reports for the Project without the signature and seal of a licensed professional engineer.

16. Respondent was dishonest and unethical in the conduct of his business affairs when he added his undated signature and seal to the CMT reports after they were released to San Patricio County.

17. Respondent's addition of his undated signature and seal to the CMT reports when he had not performed or directly supervised the tests reflected in the CMT reports was dishonest and unethical.

18. Respondent added his signature and seal to the CMT reports, after he reviewed the testing data, to appease Mr. Shrier's concern that the CMT reports needed to be signed and sealed by a licensed engineer.

19. Staff failed to prove a common understanding and interpretation among professional engineers concerning the requirements relating to material testing in conformance with the Professional Services Procurement Act (PSPA).

20. Respondent has no history of prior violations of Board rules.

21. Respondent's conduct did not result in any economic damage.

22. Respondent did not profit from his actions.

## II. CONCLUSIONS OF LAW

1. The Texas Board of Professional Engineers (Board) is the agency charged with administering and enforcing the provisions of the Texas Professional Engineers Act and the Board Rules, pursuant to Tex Occ. Code Ann. §§ 1001.207, 1001.451, 1001.452, and 1001.454.

2. The State Office of Administrative Hearings has jurisdiction over the hearing in this

TBPE000014

proceeding, including the authority to issue a proposal for decision with proposed findings of fact and conclusions of law, pursuant to Tex. Gov't Code Ann. ch. 2003.

3. Notice of the complaint and of the hearing on the merits was provided as required by Tex Occ. Code Ann. § 1305.253 and by the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.051 and 2001.052.

4. The Board had the burden of proving the case by a preponderance of the evidence pursuant to 1 Tex. Admin. Code (TAC) § 155.41.

5. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.33(b) when he failed to supervise the performance of the CMT testing.

6. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.33(f) when he allowed TSI to release the CMT reports without having signed, dated, and sealed the CMT reports before they were released.

7. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.63(b)(2) when he failed to exercise reasonable care and diligence to prevent TSI from submitting a competitive bid for professional engineering services in violation of the PSPA.

8. Respondent failed to engage in professional and business activities in an honest and ethical manner when he added his undated signature and seal to CMT reports after they had been released in an effort to appease the concern of San Patricio's engineer that the CMT reports needed to be signed and sealed by a licensed professional engineer.

9. The Board is authorized to assess an administrative penalty of no more than $3000 per violation of Board rules, and may include in the penalty the actual costs of investigating the action. Tex. Occ. Code Ann. § 1001.502 (a) and (c).

10. The sanctions suggested by 22 TAC § 139.35(b) for each of Respondent's violations are a two-year probated suspension of Respondent's license, a reprimand, formal or informal, and a fine of $500 to $2,500.

11. Taking into consideration the factors set forth in 22 TAC § 139.35(a), the above Findings of Fact support a less severe sanction to deter future misconduct.

12. Respondent's license should be suspended for a period of two years, and the period of suspension should be fully probated. In addition, Respondent should receive a formal reprimand and be assessed an administrative penalty of $4,000.00, inclusive of any cost incurred by the Board in its investigation of this matter.

TBPE000015

# ORDER

WHEREFORE, PREMISES CONSIDERED, the Texas Board of Professional Engineers does hereby issue a Formal Reprimand and a two-year suspension of the Texas engineer license held by Mr. Raghunath Dass, P.E., License Number 90119, for conduct alleged in the foregoing Final Board Order, to be fully probated for the entire period contingent upon Respondent's payment of a $4,000 administrative penalty to the Board within thirty days of the date this Order is final and appealable. Respondent's failure to pay the administrative penalty within thirty days of the date this Final Order is final and appealable shall constitute a separate violation of the Act and may result in further disciplinary action against Respondent including but not limited to Respondent's probation being vacated by operation of law without any further action other than notice from the Board's Executive Director. The probation will be further contingent upon Respondent not being found in violation of a separate offense of the Act or Board rules during said period of probation by the Board.

DATE ISSUED: August 16, 2012, by the

MEMBERS OF THE TEXAS BOARD OF PROFESSIONAL ENGINEERS:

G. Kemble Bennett, Ph.D., P.E.
Chair

Lance Kinney, P.E.
Executive Director

TBPE000017

APPROVED AS TO FORM

Dewey E. Helmcamp III
Staff Attorney

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Final Order has been served on the 20th of August 2012, Federal Express Tracking No. 7987 7642 0049 to the Respondent:

Mr. Raghnuath Dass
8719 Copperbrook Drive
Houston, TX 77095

Lance Kinney, P.E.
Executive Director

TBPE000018

# Tab 7

Cover Letter for (Dass's) Initial Brief,
dated Mar. 26, 2013

March 26, 2013

Ms. Amalia Rodriguez-Mendoza
Travis County District Clerk (Civil)
Travis County Courthouse
1000 Guadalupe, Suite 302
Austin, Texas 78701

RE:    Cause No. D-1-GN-12-003397; Raghunath Dass, P.E. v. Texas Board of Professional Engineers; In The 419th Judicial Court of Travis County, Texas

Dear Ms. Rodriguez-Mendoza,

Enclosed for filing, please find the Plaintiff's Initial Brief in the above-referenced matter.

By copy of this letter, I am forwarding the copies to all interested parties.

Thank you,

Sincerely,

*[signature]*

Raghunath Dass, PE

Encl.   Plaintiff's Brief

cc:    Honorable Judge Gisela Triana, 200th Court
cc:    Veena Mohan, Assistant Attorney General

RECEIVED

APR 0 1 2013

OFFICE OF THE ATTORNEY GENERAL
ADMINISTRATIVE LAW DIVISION

# Tab 8

Notice of Appeal, dated Oct. 23, 2013

# IN THE 419TH JUDICIAL DISTRICT COURT
## TRAVIS COUNTY, TEXAS
### CAUSE NO: D-1-GN-12-003397

| | | |
|---|---|---|
| RAGHUNATH DASS, P. E., | § | IN THE THIRD COURT OF APPEALS |
| | § | |
| Appellant, | § | |
| | § | |
| V. | § | AUSTIN, TEXAS |
| | § | |
| TEXAS BOARD OF | § | NO: |
| PROFESSIONAL ENGINEERS | § | |
| | § | |
| Appellee. | § | |

Unofficial copy - Travis Co. District Clerk Velva L. Price

Filed in The District Court
of Travis County, Texas

ES OCT 24 2013

At 12:27 P.M.

Amalia Rodriguez-Mendoza, Clerk

## NOTICE OF APPEAL

Notice is given that Raghunath Dass, PE, Appellant, appeals to the Third Court of

Appeals the Final Judgment of this Court, entered on September 27, 2013. The Final

Judgment resulted from a Judicial Review of a Final Order from Texas Board of

Professional Engineers, Appellee.

Respectfully submitted,

Raghunath Dass, PE
Appellant Pro Se
8719 Copperbrook Drive
Houston, Texas 77095
Phone: (281) 248 3983
Email: rdass47@yahoo.com

The State of Texas          County of Harris

Sworn to and subscribed before me on this the 23 day of October, 2013
to which witness my hand and seal of office.

_____ Notary Public Signature

Lisa Bohmann          Name of Notary Public

L. BO
Notary Public, State of Texas
My Commission Expires
December 19, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Appeal has been mailed on the 23rd day of October 2013, to:

Veena Mohan
Assistant Attorney General
Office of the Attorney General
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711-2548
Email: veena.mohan@texasattorneygeneral.gov
Telephone: (512) 936 - 0535
Facsimile: (512) 457- 4676

ATTORNEY FOR APPELLEE

_____
Raghunath Dass

Unofficial copy - Travis Co. District Clerk Velva L. Price

October 23, 2013


Ms. Amalia Rodriguez-Mendoza
Travis County District Clerk (Civil)
Travis County Courthouse
1000 Guadalupe, Suite 302
Austin, Texas 78701

RE:   Notice of Appeal
      Cause No. D-1-GN-12-003397; Raghunath Dass, P.E. v. Texas Board of
      Professional Engineers; In The 419th Judicial Court of Travis County, Texas


Dear Ms. Rodriguez-Mendoza,

Enclosed for filing, please find the Appellant's Notice of Appeal in the above-referenced
matter.

By copy of this letter, I am forwarding the copies to all interested parties.


Thank you,

Respectfully,

Raghunath Dass, PE



Encl.   Notice of Appeal

cc:     Veena Mohan, Assistant Attorney General

Unofficial copy - Travis Co. District Clerk Velva L. Price

# Tab 9

Texas Board of Professional Engineer's
2005 Policy Advisory Opinion on
Construction Materials Testing, dated
Aug. 20, 2009

# Texas Board of Professional Engineers
## Policy Advisory Opinion Regarding Construction Materials Engineering
### August 20, 2009

**Executive Summary:** The assessment of a construction material for quality, appropriateness and acceptability is considered by the Board to be an engineering activity. These Construction Materials Engineering (CME) activities must be performed by licensed professional engineers. Construction materials testing (CMT), within the context of CME includes collecting samples, performing well-defined test procedures, and reporting of data. In certain situations, performing tests and construction materials sampling using well-defined engineering specifications may not be considered engineering activities.

**Discussion:** On construction projects, engineers are called upon to assess the quality, appropriateness and acceptability of the materials that are used. These assessments are known collectively as CME. The CME includes the determination of the scope and procedures of testing for the project, the supervision of testing, and the analysis of test results for construction material acceptance purposes or for use in engineering recommendations. Although we most commonly associate CME with the analysis of concrete and soil, CME is conducted on any material used in construction including but not limited to timber, asphaltic concrete, steel, selected fill materials, recycled materials, aggregates, epoxies, and polymers.

Because it is engineering, CME must be personally performed by a licensed engineer or be directly supervised by a licensed engineer, and can only be offered to the public in full conformance with the Texas Engineering Practice Act (Act). Any CME activities that are contracted by a political subdivision of the State of Texas or an agency of the state, or on the political subdivision or agency's behalf, must be acquired in conformance with the Professional Services Procurement Act, Article 2254.004 of the Texas Government Code.

The CMT, within the context of CME includes collecting samples, performing well-defined test procedures, and reporting of data. In certain situations, performing tests and sampling by using well-defined engineering specifications may not be considered engineering activities. However, if analysis of test data is done or a determination is made that a material is acceptable, these activities would be considered to be CME and require a licensed professional engineer. Because the engineer is responsible for accepting the public works project, acceptance or rejection of materials or work, the direct supervision by an engineer of CMT for those acceptance decisions is needed.

**Public Works:** When constructing public works, the state or political subdivision of the state must ensure that the engineering construction is performed under the direct supervision of a licensed engineer (Sec. 1001.407, Occupations Code). This supervision must include the direct supervision of materials testing and engineering necessary and appropriate for verification of compliance with construction plans and acceptance of the project by the public owner.

A licensed professional engineer must directly supervise any element of acceptance testing, from data collection to final determination. When engineers are hired for these services, they must be retained under the Professional Services Procurement Act (PSPA). The CMT services unrelated to acceptance testing might be acquired using other purchasing procedures provided the CMT services do not include any CME function. For public entities with staff engineers who make acceptance decisions, the engineers must be in a position to determine if the testing and inspection services are properly performed at a frequency that provides confidence that the materials and work meet (or reasonably conform in some cases) the contract requirements or standards of practice. This requires reviewing qualifications, monitoring inspection and testing services and review of test and inspection data.

The validity of an engineering judgment in the construction materials area is integrally tied to the validity of test data, which is in turn directly related to training of technical staff, performance of testing equipment, and other elements associated with an accredited engineering laboratory. Therefore, by the standard established by Sec. 1001.407, Occupations Code, CMT conducted for the purpose of verification and acceptance of a facility is considered a CME function.

The Board recognizes as a specific exception for CMT conducted under a federally approved quality assurance program (QA) specifically governing the Texas Department of Transportation, provided that alternate methods of ensuring appropriate engineering direct supervision are in place. In addition, CMT services used for a contractor's internal quality control purposes only and are not used by the owner for verification and/or acceptance purposes may not be considered engineering.